## IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT JACKSON
_____

|  |  |  |
|---|---|---|
| **ERICA REBECCA HURD, deceased** | ) | Madison County Circuit Court |
| **by and through her parents and next** | ) | Nos. C-95-284-I and C-95-295-I |
| **friends, CHARLES and VIRGINIA** | ) |  |
| **HURD, and CORTNEY DESHAUN** | ) |  |
| **RAGLAND, a minor, by and through his** | ) |  |
| **next friend, WANDA KAY GRIME**, | ) |  |
|  | ) |  |
| Plaintiffs/Appellants. | ) |  |
|  | ) |  |
| VS. | ) | C. A. NO. 02A01-9607-CV-00170 |
|  | ) |  |
| **DAVID WOOLFORK, individually and** | ) |  |
| **as an agent, servant, employee, Sheriff,** | ) |  |
| **and representative of MADISON** | ) |  |
| **COUNTY, TENNESSEE and** | ) |  |
| **MADISON COUNTY, TENNESSEE,** | ) |  |
|  | ) |  |
| Defendants/Appellees. | ) |  |
|  | ) |  |

# FILED

**May 6, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

_____

From the Circuit Court of Madison County at Jackson.
**Honorable Whit A. Lafon, Judge**

**Larry C. Sanders**,
GARRETY & SANDERS, P.C., Jackson, Tennessee
Attorney for Plaintiffs/Appellants.

**Blake Anderson**, Jackson, Tennessee
Attorney for Defendant/Appellee, Daivd Woolfork, Individually.

**James I. Pentecost**,
WALDROP & HALL, P.A., Jackson, Tennessee
Attorney for Defendants/Appellees Sheriff David Woolfork and Madison County, Tennessee.

OPINION FILED:

**AFFIRMED AND REMANDED**

**FARMER, J.**

**CRAWFORD, P.J., W.S.** : (Concurs)
**LILLARD, J.** : (Concurs)

Plaintiffs Erica Rebecca Hurd, deceased, by and through her parents and next friends,

Charles and Virginia Hurd, and Cortney Deshaun Ragland, a minor, by and through his next friend,

Wanda Kay Grimes, appeal the trial court's order dismissing their wrongful death actions against

Defendants/Appellees Madison County and David Woolfork, Madison County's Sheriff. We affirm.

In their respective complaints, the Plaintiffs sued Sheriff Woolfork and Madison

County for the wrongful deaths of Plaintiff Erica Rebecca Hurd and Charles Edward Ragland,

Plaintiff Cortney Deshaun Ragland's father. It is further alleged that Hurd and Ragland were killed

by one Farris G. Morris, Jr., on September 17, 1994. A warrant for Morris's arrest had been issued

on September 7, 1994, but Sheriff Woolfork's office had not executed the warrant by September 17,

1994, the date Hurd and Ragland were killed.

Specifically, the Plaintiffs' complaints contained the following factual allegations:

5. On or about August 23, 1994, Farris G. Morris, Jr. was arrested and charged with aggravated rape in Madison County, Tennessee. On or about August 30, 1994, a preliminary hearing was held on the aggravated rape charges against Morris and sufficient evidence was found to believe that such crime had occurred and the case was bound over to the Madison County Grand Jury. On or about September 7, 1994, a warrant for Morris' arrest charging violation of the terms of his probation from a 1992 drug sale conviction. Such arrest warrant was duly signed by a properly authorized judge and delivered to David Woolfork, Sheriff of Madison County, Tennessee.

6. The said David Woolfork, in direct violation of the duties imposed upon him under the provisions of T.C.A. §8-8-201 engaged in extremely reckless conduct by failing to promptly and properly process said warrant for Morris' arrest although the said David Woolfork and/or members of the Madison County Sheriff's Department knew or should have known of the dangerous and violent propensity of the said Morris to commit serious acts of bodily harm and despite having been informed by the neighbors of the said Morris of his continuing course of conduct that threatened the members of the neighborhood in which Morris resided. Said arrest warrant of September 7, 1994, was never even processed by the said David Woolfork or members of his staff until after September 17, 1994.

7. David Woolfork's continuing course of reckless conduct in failing to process the warrant for the arrest of the said Morris and his gross negligence in failing to even discover that such warrant had been properly delivered to his office for processing continued until after September 17, 1994.

The complaints further alleged, respectively, that on September 17, 1994:

Morris brutally beat and stabbed young Erica Rebecca Hurd to death while she was visiting her sister who resided in the same duplex in which Morris was known by the Defendant to be living.

. . . .

. . . Morris brutally murdered and killed Charles Edward Ragland by shooting him in the head with a shotgun. The said Charles Edward Ragland lived and resided in the same duplex in which the said Morris was known by the Defendants to be living.

In seeking to hold Sheriff Woolfork and Madison County liable for the deaths of Hurd and Ragland, the Plaintiffs alleged the following causes of action:

The reckless conduct of David Woolfork and his failure to fulfill the duties imposed upon him by T.C.A. §8-8-201 and the gross negligence of the named Defendants in failing to fulfill the duties of the Sheriff's office directly and proximately led to the violent death[s] of [Erica Rebecca Hurd and Charles Edward Ragland] for which each of the above-named Defendants should be held both jointly and severally liable. The further reckless and grossly negligent conduct of the Defendant, David Woolfork, in devoting his time and attention to the political aspects of his elected position rather [than] to fulfilling the duties statutorily imposed upon him by T.C.A. §8-8-201, constitutes a separate and distinct cause of action for which the said David Woolfork should be held individually responsible.

Contending that the complaints failed to state claims upon which relief could be granted, the Defendants subsequently filed motions to dismiss pursuant to rule 12.02(6) of the Tennessee Rules of Civil Procedure. As grounds for their motions, the Defendants argued that the Plaintiffs' wrongful death actions were barred by (1) the public duty doctrine of governmental immunity and, alternatively, (2) discretionary function immunity. The trial court granted the motions, and this appeal followed.[1]

Our supreme court recently summarized the standard to be applied by a court in addressing a motion to dismiss a complaint for failure to state a claim upon which relief can be granted:

Such a motion pursuant to Tenn. R. Civ. P. 12.02(6) tests the legal

---

[1]Prior to granting the Defendants' motions to dismiss, the trial court entered an agreed order consolidating the cases.

sufficiency of a complaint; it admits the truth of all relevant and material allegations, "but asserts that such *facts* do not constitute a cause of action as a matter of law." ***Pursell v. First American National Bank et al.***, [937 S.W.2d 838, 840] (Tenn. 1996) (emphasis added).

In ruling on such a motion, courts must construe the allegations in the plaintiff's favor and accept allegations of fact as true. However, the inferences to be drawn from the facts or the legal conclusions as set forth in a complaint are not required to be taken as true. ***Dobbs v. Guenther***, 846 S.W.2d 270, 273 (Tenn. App. 1992).

***Riggs v. Burson***, No. 03-S-01-9603-CV-00032, 1997 WL 102427, at *2 (Tenn. Mar. 10, 1997) (emphasis in original). We agree with the trial court's ruling that, even accepting their allegations of fact as true, the Plaintiffs' complaints fail to state claims upon which relief can be granted.

***PUBLIC DUTY DOCTRINE***

In ***Ezell v. Cockrell***, 902 S.W.2d 394, 404 (Tenn. 1995), the supreme court confirmed that the public duty doctrine had survived the enactment of Tennessee's Governmental Tort Liability Act (GTLA).[2] In defining the public duty doctrine, the court explained that:

The public duty doctrine originated at common-law and shields a public employee from suits for injuries that are caused by the public employee's breach of a duty owed to the public at large. Kelly M. Tullier, ***Governmental Liability for Negligent Failure to Detain Drunk Drivers***, 77 Cornell L. Rev. 873, 886 (1992). The doctrine can be traced to the United States Supreme Court's decision in ***South v. Maryland***, 59 U.S. (18 How.) 396, 15 L. Ed. 433 (1855), which held that a sheriff is not liable for failing to protect a kidnap victim because the sheriff's duty to keep the peace was "a public duty, for neglect of which he is amenable to the public, and punishable by indictment only." ***Id.*** at 403.

***Ezell***, 902 S.W.2d at 397.

In ***Ezell***, the plaintiff's husband was killed and the plaintiff was seriously injured by an intoxicated driver. ***Ezell***, 902 S.W.2d at 396. Earlier in the evening, the police chief of the City of Elkton had permitted the driver to operate an intoxicated friend's car when the police chief

---

[2]T.C.A. §§ 29-20-101 to 29-20-407 (1980 & Supp. 1996).

allegedly knew, or should have known, that the driver also was intoxicated. *Id*. The plaintiff sued the City of Elkton and its police chief based on the police chief's negligence in failing to arrest the intoxicated driver. *Id*. at 396-97. Reaffirming the viability of the public duty doctrine, the court concluded that the doctrine barred the plaintiff's suit. *Id*. at 404.

We similarly conclude that the allegations of the Plaintiffs' complaints bring their actions against Sheriff Woolfork and Madison County within the public duty doctrine of governmental immunity. The Plaintiffs' theory of negligence was that the Sheriff failed to promptly and properly process the warrant for the arrest of Farris G. Morris, Jr. A sheriff's duty to keep the peace, however, includes the execution of arrest warrants and is a public duty, "not owed to any individual in particular." *Ezell*, 902 S.W.2d at 397. Under the circumstances of this case, therefore, the public duty doctrine bars the Plaintiffs' present actions against Sheriff Woolfork and Madison County.[3]

Although our research revealed no reported Tennessee decisions addressing this issue, we note that our conclusion is supported by a Texas court's decision in ***Munoz ex rel. Martinez v. Cameron County***, 725 S.W.2d 319 (Tex. Ct. App. 1986). There, the plaintiffs brought a wrongful death action against Cameron County and the county sheriff, alleging that the death of the plaintiffs' mother was caused by the sheriff's failure to execute an arrest warrant. ***Munoz***, 725 S.W.2d at

---

[3]The Plaintiffs suggest that *Ezell* was wrongly decided and that, contrary to the supreme court's holding therein, the legislature did not intend for the public duty doctrine to survive passage of the GTLA. In support of this contention, the Plaintiffs cite the GTLA's following language:

> Wherein immunity from suit is removed by this chapter, consent to be sued is granted and liability of the governmental entity shall be determined ***as if the governmental entity were a private person***.

T.C.A. § 29-20-206 (1980) (emphasis added). The Plaintiffs then argue that:

> This section was completely overlooked in the *Ezell* decision. On its face, . . . it commands the courts to adjudicate the liability of governmental entities as if they were private persons. Since private persons are not protected by the public duty doctrine, neither are governmental entities or their agents.

While the Plaintiffs raise an interesting argument with regard to construction of the GTLA, we are unwilling to presume that the supreme court, in deciding *Ezell*, was unaware of the cited language in section 29-20-206. More importantly, however, this Court is not at liberty to depart from precedent decisions of the supreme court of this state. ***Estate of Schultz v. Munford, Inc.***, 650 S.W.2d 37, 39 (Tenn. App. 1982).

319-20. Pursuant to a complaint filed by the decedent, an arrest warrant had been issued for the decedent's husband charging him with aggravated assault. *Id*. at 320. Although the Sheriff received the warrant on October 17, by November 6 the Sheriff still had not executed the warrant. On that day, the warrant was withdrawn after the decedent's husband agreed to turn himself in to police. Apparently, however, the husband did not turn himself in as promised. On November 16, he shot and killed the decedent. *Id*.

Holding that the plaintiffs' action was barred by the public duty doctrine first set forth in *South v. Maryland*, the court reasoned:

> [W]e can find no case in which a sheriff or other law enforcement officer has been held liable for personal injury damages for failure to execute a criminal warrant of arrest.
>
> . . . .
>
> . . . [I]t goes without saying that a sheriff has a duty to execute an arrest warrant that comes to his hand, much the same as he has a duty to keep and maintain the peace.
>
> . . . .
>
> We believe the rule of *South v. Maryland* applies to the present situation. The purpose of the warrant of arrest is to bring the accused lawbreaker to court to answer for the commission of an alleged offense and is not to prevent future crimes from occurring.

*Munoz*, 725 S.W.2d at 321-22.

### *SPECIAL DUTY EXCEPTION*

The Plaintiffs contend, however, that the public duty doctrine does not apply in this case because the allegations of their complaints bring their actions within the special duty exception to the doctrine. In adhering to the public duty doctrine in *Ezell*, the supreme court recognized the continuing viability of the special duty exception to the doctrine's no-liability rule. *Ezell*, 902 S.W.2d at 401. The special duty exception applies "where a 'special relationship' exists between the plaintiff and the public employee, which gives rise to a 'special duty' that is more particular than the duty owed by the employee to the public at large." *Id*. In *Ezell*, the court undertook to further

refine the special duty exception and concluded that application of the exception should be limited to the following three circumstances:

> 1)      [When] officials, by their actions, affirmatively undertake to protect the plaintiff, and the plaintiff relies upon the undertaking;
>
> 2)      [When] a statute specifically provides for a cause of action against an official or municipality for injuries resulting to a particular class of individuals, of which the plaintiff is a member, from failure to enforce certain laws; or
>
> 3)      [When] the plaintiff alleges a cause of action involving intent, malice, or reckless misconduct.

*Id*. at 402.

Despite its recognition of the special duty exception to the public duty doctrine, the court concluded that the exception did not apply in *Ezell*. Regarding the first circumstance, the court explained that:

> The plaintiff's allegations do not support application of a "special-duty" of care. Neither [the police chief] nor the City of Elkton had, by their actions, affirmatively undertaken to protect the plaintiff. In fact, [the police chief] never had any contact with the plaintiff; thus, the defendants had taken no action which would have caused the plaintiff to particularly rely upon them for protection.

*Ezell*, 902 S.W.2d at 403. The court also rejected the plaintiff's argument that a special duty of care arose from certain statutes pertaining to drunk driving, public intoxication, and the general authority and responsibility of police officers to enforce laws and make arrests. The court reasoned that:

> Such statutes neither impose a mandatory duty to arrest every motorist suspected of driving under the influence, nor authorize negligence actions against police officers who do not arrest every suspected drunk driver.

*Id*. Finally, the court concluded that the third circumstance did not apply because the plaintiff's allegations did not establish intentional, malicious, or reckless conduct but, instead, established only simple negligence. *Id*.

After careful consideration, we likewise conclude that none of the foregoing circumstances apply in this case and, thus, that the special duty exception does not prevent dismissal of the Plaintiffs' actions. As in *Ezell*, neither Sheriff Woolfork nor Madison County had, by their actions, affirmatively undertaken to protect the decedents in this case, Hurd and Ragland. According to the Plaintiffs' complaints, the Madison County Sheriff's Department had "been informed by the neighbors of the said Morris of his continuing course of conduct that threatened the members of the neighborhood in which Morris resided." The complaints contain no allegations, however, that either of the Plaintiffs' decedents had contacted, or been contacted by, Sheriff Woolfork or the Sheriff's Department concerning Morris's threatening conduct. The complaints also contain no allegations that the decedents relied upon Sheriff Woolfork or his department to provide them with protection from Morris. *Cf. Miller v. Niblack*, No. 02A01-9505-CV-00101, 1996 WL 578492, at *6 (Tenn. App. Oct. 9, 1996) (concluding that special duty exception applied where, pursuant to state contract, defendants affirmatively undertook to accurately record plaintiffs' court-ordered blood tests and plaintiffs were justified in relying upon defendants to do so), *perm. app. denied* (Tenn. Mar. 3, 1997).

Even in *Munoz*, where the plaintiffs' decedent was the victim of the aggravated assault for which the arrest warrant was issued, the Texas court still concluded that no special relationship existed between the sheriff and the decedent. The court stated:

> Our inquiry then is whether this duty to timely execute a warrant is owed to a particular person or is owed to the public generally.
>
> . . . .
>
> The exceptions to this rule of non-liability appear mainly to be where a special relationship is created between the victim and the agency or officer. . . .
>
> . . . .
>
> In reviewing the summary judgment evidence, we find no evidence that could be construed as creating a special relationship under the . . . cited cases between the deceased and the . . . sheriff. In

the absence of a special relationship, no liability exists at common law.

*Munoz*, 725 S.W.2d at 321-22.

We also reject the Plaintiffs' contention that the second part of the special duty exception applies by virtue of Tennessee Code Annotated sections 8-8-201(1) and 8-8-207. Section 8-8-201(1) imposes upon sheriffs the duty to:

> Execute and return, according to law, the process and orders of the courts of record of this state, and of officers of competent authority, with due diligence, when delivered to the sheriff for that purpose.

T.C.A. § 8-8-201(1) (1993). Section 8-8-207 further provides that:

> A sheriff's disobedience of the command of any process is a contempt of the court from which it issued, and may be punished accordingly; *and such sheriff is further liable to the action of the party aggrieved*.

T.C.A. § 8-8-207 (1993) (emphasis added).

Citing the foregoing language, the Plaintiffs contend that the special duty exception applies in this case because section 8-8-207 specifically provides for a cause of action against the sheriff by imposing liability against him for his failure to obey the command of any process. We conclude, however, that the exception does not apply because the Plaintiffs are not members of the particular class of individuals referred to in the statute. Specifically, the Plaintiffs do not qualify as aggrieved parties for purposes of section 8-8-207 because the Plaintiffs are not parties to the underlying action for which the arrest warrant was issued. The only parties to that action were the State of Tennessee and Farris G. Morris, Jr. *See Mallder v. Rasmussen*, 495 N.E.2d 1356, 1357-58 (Ill. App. Ct. 1986) (concluding that, where Illinois statute similarly provided that sheriff who disobeys command of any writ, warrant, process, order, or decree shall be liable to "party aggrieved," sheriff's liability under statute was limited to "parties to the proceeding"); *cf. Maxwell v.*

*Hixson*, 383 F. Supp. 320, 324 (E.D. Tenn. 1974) (concluding that, under predecessor of T.C.A. § 8-8-207, party to judicial attachment or garnishment proceeding could recover from sheriff any damage sustained by party as result of sheriff's false or unlawful return of process), *aff'd*, 425 U.S. 927 (1976).

Finally, we reject the Plaintiffs' contention that the special duty exception applies in their cases because their complaints allege causes of action involving reckless conduct. It is true that both Plaintiffs' complaints allege that Sheriff Woolfork "engaged in extremely reckless conduct" by failing to promptly process the warrant for Morris's arrest. The allegation that Sheriff Woolfork engaged in "reckless" conduct, however, is a legal conclusion. *See Sheiman v. Lafayette Bank & Trust Co.*, 492 A.2d 219, 223 (Conn. App. Ct. 1985) (concluding that mere use of word "reckless" in complaint is insufficient to raise actionable claim because allegation of reckless conduct is conclusion of law); *Hearon v. City of Chicago*, 510 N.E.2d 1192, 1195 (Ill. Ct. App. 1987) (holding that complaint's allegation of recklessness was legal conclusion unsupported by allegations of specific acts). In ruling on the Defendants' motions to dismiss, the trial court, and this court on appeal, are not required to accept such legal conclusions as true. *Riggs v. Burson*, No. 03-S-01-9603-CV-00032, 1997 WL 102427, at *2 (Tenn. Mar. 10, 1997). Only the complaints' factual allegations must be accepted as true. *Id*. The only alleged factual basis for the Plaintiffs' claims of reckless conduct is that Sheriff Woolfork was "devoting his time and attention to the political aspects of his elected position rather [than] to fulfilling the duties statutorily imposed upon him by T.C.A. §8-8-201." At most, these factual allegations establish simple negligence. *Ezell*, 902 S.W.2d at 403.

In accordance with the supreme court's decision in *Ezell v. Cockrell*, 902 S.W.2d 394 (Tenn. 1995), we hold that the public duty doctrine of governmental immunity bars the Plaintiffs' present lawsuits against Sheriff Woolfork and Madison County and, further, that the Plaintiffs' complaints fail to contain allegations which would bring the Plaintiffs' actions within the doctrine's special duty exception.[4]

_____

[4]Inasmuch as we have concluded that the public duty doctrine bars the Plaintiffs' lawsuits, we need not address the issue of whether the Sheriff's failure to execute the arrest warrant constituted a discretionary act. Under the GTLA, a governmental entity is immune from suits for injuries arising out of a governmental employee's performance of, or failure to perform,

The trial court's judgment is affirmed.  Costs of this appeal are taxed to Appellants, for which execution may issue if necessary.

_____
FARMER, J.

_____
CRAWFORD, P.J., W.S. (Concurs)

_____
LILLARD, J. (Concurs)

---

a discretionary function.  *See* T.C.A. § 29-20-205(1) (1980); *see generally **Bowers ex rel. Bowers v. City of Chattanooga***, 826 S.W.2d 427, 430-32 (Tenn. 1992).  In declining to address this issue, we reject the Plaintiffs' argument that the public duty doctrine applies only to acts involving the exercise of discretion.  Rather, we interpret ***Ezell*** to mean that the public duty doctrine exists in addition to, and independent of, the exceptions to the waiver of governmental immunity expressly listed in the GTLA.  ***See Ezell***, 902 S.W.2d at 400 (citing T.C.A. § 29-20-205(1)--(8) (1980 & Supp. 1994)).  If the public duty doctrine were to apply only to acts involving the exercise of discretion, as the Plaintiffs urge, then the doctrine would be subsumed by the GTLA's discretionary function exception.