IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 18, 2005 Session

## KIM WELLS, ET AL. v. HAMBLEN COUNTY TENNESSEE, ET AL.

**Appeal from the Circuit Court for Hamblen County**
**No. 02CV238     John K. Wilson, Judge**

---

### No. E2004-01968-COA-R3-CV - FILED AUGUST 22, 2005

---

The trial court dismissed an action against the county arising from a deputy sheriff's allegedly negligent failure to arrest a man who had just assaulted his former girlfriend, the mother of his child. The man later murdered his young son. The mother of the child appealed. Because the public duty doctrine provided a shield from liability, and the complaint did not allege facts sufficient to establish the special duty exception, we affirm the trial court.

**Tenn. R. App. P. Appeal as of Right; Judgment of the Circuit Court**
**Affirmed**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and D. MICHAEL SWINEY, JJ., joined.

Larry V. Roberts, Kingsport, Tennessee, for the appellants, Kim Wells, Individually, Kim Wells, Next of Kin of Matthew Wells, Deceased.

Gary M. Prince, P. Alexander Vogel, Knoxville, Tennessee, for the appellee, Hamblen County Tennessee d/b/a Hamblen County Sheriff's Department.

### OPINION

This matter concerns a domestic abuse incident resulting in the death of a child and the responsibility of Hamblen County ("County") for its law enforcement officer's handling of the matter. The child's mother sued the County on behalf of herself and her deceased child seeking damages. The trial court granted the County's motion to dismiss for failure to state a claim upon which relief can be granted. For purposes of this appeal, we must treat the allegations of the complaint, as set out below, as true.

The child, Matthew Wells, was almost three years old at the time of the incident and was living with his mother, Kim Wells. The child had been visiting his father, Paul Carr, at the residence of Carr's father on September 29, 2002, when Ms. Wells came to retrieve some of her personal items

and to pick up her son. Ms. Wells was accompanied by a friend. In the past, Ms. Wells had been assaulted by Paul Carr, and he had made threats to kill her or her family.

While Ms. Wells was gathering her personal things, Matthew and her friend waited in the car. Paul Carr then confronted Ms. Wells telling her that he wanted to get back together with her. When Ms. Wells told him that she did not want to, he began choking her and slammed her head against concrete. He said that if he could not have Ms. Wells, then no one else could. Ms. Wells managed to escape from him and ran toward her car. Before she could lock the car door, Paul Carr grabbed Matthew through the window causing the child to hit his head on the car window. Paul Carr then took the child into his father's house.

Ms. Wells left and contacted the Hamblen County Sheriff's Department. Deputy W. T. Snow answered the call, meeting Ms. Wells at a convenience store. Deputy Snow took a report and photographs of Ms. Wells that were attached to the complaint as exhibits. Ms. Wells told Deputy Snow that she feared Paul Carr would harm his son and asked the officer to go to Mr. Carr's father's residence to get the child and arrest Paul Carr. She said that she had never seen him so angry.

Deputy Snow told Ms. Wells not to worry. Based on his experience and training in domestic abuse cases, he told her that he did not believe Paul Carr would harm their son. Deputy Snow told Ms. Wells that he would take care of Matthew. He said that he would serve an arrest warrant on Paul Carr before Carr left for work the following morning and would then get Matthew. Deputy Snow told Ms. Wells that he needed a warrant to arrest Carr. According to the complaint, the officer said "If I need to shoot somebody when I go up there, I need to have a warrant or I'll be liable."

Deputy Snow offered to transport Ms. Wells to get an arrest warrant issued, but she declined. Ms. Wells signed a statement at the time expressly declining the offer. Ms. Wells was then taken by her mother to the hospital for treatment for her injuries.

Later that day, after Paul Carr had left his father's home with his son, Carr murdered Matthew. Without further elaboration, the complaint states that Deputy Snow had an arrest warrant issued for Paul Carr that was never served. The implication is that it was a warrant for the assault on Ms. Wells and that Deputy Snow obtained it in order to arrest Mr. Carr the next day, as he had told Ms. Wells he would.

Kim Wells, both individually and as Matthew's next of kin, sued the County[1] under the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-101 *et seq.* (hereinafter "GTLA") for wrongful death. According to her complaint, Ms. Wells alleges that the County is liable because Deputy Snow:

---

[1]The complaint does not name any defendant in his or her individual capacity.

negligently or willfully failed to take all reasonable measures necessary to assist and/or assure the immediate safety of Matthew Wells in that, among other things, he failed to:

> a)  go to and properly evaluate the scene, including communicating with Matthew, Paul Carr and Paul Carr's father;
>
> b)  arrest Paul Carr and get Matthew Wells;
>
> c)  surveil Paul Carr in the event he left with Matthew Wells; and
>
> d)  request additional officers for assistance.

The complaint alleged that the child died as a result of Deputy Snow's negligence. Ms. Wells sought to recover monetary damages from Hamblen County.[2] The County filed a motion to dismiss relying on the public duty doctrine arguing that Deputy Snow's duty to arrest is to the public generally and not to individual members of the public. Ms. Wells, however, argued that the public duty doctrine was not applicable since Deputy Snow undertook a special duty to protect Matthew Wells and Ms. Wells relied upon the deputy's undertaking.

The trial court granted the County's motion to dismiss without elaboration.[3] Ms. Wells then filed this appeal.

## I. STANDARD OF REVIEW

A Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint itself. *Willis v. Dept. of Corrections*, 113 S.W.3d 706, 710 (Tenn. 2003); *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999). The standard of appellate review of a dismissal under Rule 12.02(6) requires that we take the factual allegations in the complaint as true and review the trial court's legal conclusions *de novo* without giving any presumption of correctness to those conclusions. *Willis*, 113 S.W.3d at 710. The trial court should grant a motion to dismiss only "when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Id.*

---

[2] Ms. Well's complaint also contains allegations that the sheriff's office dispatcher was negligent in sending only one officer to respond to Ms. Well's call. This claim was included within the trial court's order of dismissal and does not appear to be the subject of this appeal. In any event, the County is not liable for the actions of the dispatcher for the same reason it is not liable for the actions of Deputy Snow.

[3] Plaintiff's motion to reconsider the dismissal was denied by the trial court.

## II. GOVERNMENTAL IMMUNITY

As framed by the parties, the issues presented in this appeal relate to the common law doctrine of public duty, which precludes liability for actions by governmental employees in applicable situations, and the special duty exception to that doctrine.

In a negligence action against a local governmental entity, the threshold question is generally whether that entity's governmental immunity has been waived under the GTLA. *Brown v. Hamilton County*, 126 S.W.3d 43, 46 (Tenn. Ct. App. 2003). If the county is extended immunity by the GTLA, then the public duty doctrine and its exceptions are not relevant. *Chase v. City of Memphis*, 971 S.W.2d 380, 385 (Tenn. 1998); *Brown*, 126 S.W.3d at 48. The public duty doctrine is a common law affirmative defense to liability that comes into play only if the entity is not otherwise protected by statutory immunity. *Chase*, 971 S.W.2d at 385; *Matthews v. Pickett County*, 996 S.W.2d 162, 164-65 (Tenn. 1999); *Brown*, 126 S.W.3d at 48. Similarly, while the special duty exception to the public duty doctrine negates that doctrine as a defense to liability, it has no effect on and cannot remove immunity afforded by the GTLA. *Chase*, 971 S.W.2d at 385.

If immunity is found to exist under the GTLA, no further inquiry is required as to whether the common-law-based public duty doctrine also precludes liability. *Chase*, 971 S.W.2d at 385. The public duty doctrine provides "an additional layer of defense" that need be explored only if the legislature has removed immunity through the GTLA. Consequently, where both the statutory and common law defenses are raised, it is generally true that the first question to be addressed in a negligence action against a local government is whether that government is immune from liability under the GTLA. *Matthews*, 996 S.W.2d at 165; *Brown*, 126 S.W.3d at 48.

In the case before us, the County did not assert GTLA immunity in the motion to dismiss that is the subject of this appeal[4] and, consequently, we must presume the trial court did not consider the issue. Neither will we.[5] Where, as in the case before us, only the common law public duty doctrine is raised, it is appropriate to consider only the issues presented by that defense. *Ezell v. Cockrell*, 902 S.W.2d 394, 400 n. 11 (1995); *see also Chase*, 971 S.W.2d at 385 (explaining *Ezell*'s procedural posture).

---

[4]The motion itself is general in nature, but the supporting memorandum cites only the public duty doctrine as the basis for dismissal. Similarly, the plaintiff's response deals solely with the applicability of the special duty exception.

[5]The county discusses GTLA immunity in its brief before this court and asserts that statute also requires dismissal because the allegations complain of a discretionary function. The issue is created by Tenn. Code Ann. § 29-20-205(1), pursuant to which a local government's immunity is effectively waived unless, among other grounds, the injury arises out of "the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused."

### III. PUBLIC DUTY DOCTRINE AND SPECIAL DUTY EXCEPTION

The public duty doctrine is a creature of common law, and its purpose is to shield a public employee from "suits for injuries that are caused by the public employee's breach of a duty owed to the public at large."[6] *Ezell*, 902 S.W.2d at 397. It is sometimes explained by stating that a duty owed to everyone is a duty owed to no one. *See Brown*, 126 S.W.3d at 43.

As in any other negligence action, a plaintiff must establish the existence of a duty or standard of care in an action for negligence of a government employee. *Ezell*, 902 S.W.2d at 397, 400. In Tennessee, it has long been held that a plaintiff must show the existence of a duty particular to him or her, as distinct from a duty owed to the public in general.

> It is settled law in this state that private citizens, as such, cannot maintain an action complaining of the wrongful acts of public officials unless such private citizens aver special interest or a special injury not common to the public generally.

*Ezell*, 902 S.W.2d at 397, quoting *Bennett v. Stutts*, 521 S.W.2d 575, 576 (Tenn. 1975).

As the Tennessee Supreme Court discussed in *Ezell,* the wide recognition afforded the doctrine is supported by a number of public policy considerations, particularly in the context of law enforcement. Without the doctrine, police officials could find themselves in the "untenable position of insuring the personal safety of every member of the public, or facing a civil suit for damages." 902 S.W.2d at 398. The Court also found that, "Another policy consideration justifying recognition of the public duty doctrine is that police officials often act and react in the milieu of criminal activity where every decision is fraught with uncertainty." *Id*.

In deciding that the public duty doctrine survived the passage of the GTLA and that its continued application was warranted by valid policy considerations, the Court concluded that the public duty doctrine:

> . . . serves the important purpose of preventing excessive court intervention into the governmental process by protecting the exercise of law enforcement discretion. As we observed in *State v. Jefferson*, 529 S.W.2d 674, 689 (Tenn. 1975), "[i]t is essential to the protection of society that a wide discretion be vested in officers chosen to enforce our laws. . . ." (citations omitted) . . . We think on balance, the State is better served by a policy that both protects the exercise of law enforcement discretion and provides accountability for failure to perform a duty.[7]

---

[6]While the doctrine is sometimes cast in terms of shielding employees, it has likewise been applied to shield local governmental entities from liability. *See Ezell*, 902 S.W.2d. at 404.

[7]The Court noted that Tennessee has mechanisms, including public forms of redress, other than civil negligence actions where officers can be held accountable for failure to perform a duty. *Ezell*, 902 S.W.2d at 401.

*Id.* at 400-01.

Just as the public duty doctrine remained viable after the adoption of the GTLA, so did a recognized exception to the public duty doctrine, *i.e.* the special duty exception. *Ezell*, 902 S.W.2d at 401. Where the special duty exception is found to apply, it operates to negate the public duty doctrine defense. *Matthews*, 996 S.W.2d at 165. Without that defense, and without immunity under the GTLA, a local government may be liable for its employee's negligence.

The special duty exception applies where "a 'special relationship' exists between the plaintiff and the public employee, which gives rise to a 'special duty' that is more particular than the duty owed by the employee to the public at large." *Ezell*, 902 S.W.2d at 401. In Tennessee, the special duty exception arises under any one of the following situations:

> 1) officials, by their actions, affirmatively undertake to protect the plaintiff, and the plaintiff relies upon the undertaking;
>
> 2) a statute specifically provides for a cause of action against an official or municipality for injuries resulting to a particular class of individuals, of which plaintiff is a member, from failure to enforce certain laws; or
>
> 3) the plaintiff alleges a cause of action involving intent, malice, or reckless misconduct.

*Id.* at 402.

In *Ezell*, the Supreme Court determined that the special duty exception should be retained but refined and arrived at the standard set out above after reviewing the requirements imposed in a number of other states as well as the exception's history in Tennessee courts. *Id.* at 401-02. Since *Ezell*, the Court has reaffirmed that the focus of the inquiry is the relationship between the parties. *Matthews*, 996 S.W.2d at 165.

In the case before us, there is no dispute that the determinative question is whether the special duty exception applies. If it does not, the public duty doctrine prevents imposition of liability and the case was properly dismissed.

Ms. Wells relies on the first situation in the *Ezell* definition. It is important to note the language chosen by our Supreme Court to describe that situation: "officials, **by their actions**, affirmatively undertake to protect the plaintiff . . ." This language differs from some of the tests applied in other states that were specifically considered, and impliedly rejected, by the Court in *Ezell*. In particular, the Court recognized that some states[8] find the special duty exception applicable where

---

[8]Georgia, New York, and Ohio.

there is "an explicit **assurance** by the [governmental unit], through **promises or actions**, that it would act on behalf of the injured party." *Ezell*, 902 S.W.2d at 401.

The distinction between actions and promises or assurances and the Tennessee Supreme Court's choice of language are important to our resolution of the case before us.

## IV. ANALYSIS

Ms. Wells argues that Deputy Snow affirmatively undertook to protect Matthew Wells and that liability should be imposed for his failure to make an immediate warrantless arrest of Paul Carr or to immediately obtain an arrest warrant and arrest Mr. Carr immediately thereafter. As discussed earlier, the Tennessee courts have found it important to the public interest to protect law enforcement discretion in the decision of whether, when, and how to make an arrest. *See Ezell*, 902 S.W.2d at 397-401 (discussing the policy reasons underlying the public duty doctrine and agreeing with courts that have identified those valid policy considerations.)

*Ezell* involved an action brought by a citizen who was injured in an accident caused by a drunk driver against, among others, a city government, alleging that the driver had been allowed to drive by the city's police chief when he knew or should have known the driver was intoxicated. The plaintiff alleged that the police chief breached a duty to the plaintiff when he failed to arrest the driver for public intoxication or driving under the influence.[9] 902 S.W.2d at 396-97.

The Court found the public duty doctrine applicable to these allegations and went on to examine its formulation of the special duty exception as applied to the facts alleged. *Id.* at 401-402. The Court found that the plaintiff had not alleged facts that would support the application of the special duty exception because neither the city nor the police chief had "by their actions, affirmatively undertaken to protect the plaintiff." *Id.* at 403.[10]

The Court also found unavailing the plaintiff's argument that statutes criminalizing public intoxication and driving under the influence of intoxicants, combined with statutes charging the police chief with enforcing laws relating to drunkenness by having arrested all persons violating those laws, created a special duty.[11] The Court stated:

---

[9]The police chief had prevented a woman who was obviously intoxicated from driving home from a bar, but allowed her male friend to drive her home. Approximately one hour later, the driver, with his lights off and on the wrong side of the road, crashed head-on into the car where the plaintiff and her husband, who was killed in the accident, were riding.

[10]The Court noted that the police chief had never had contact with the plaintiff and, therefore, the governmental defendants had taken no action that would have cause the plaintiff to particularly rely on them for protection.

[11]This argument was apparently made with regard to the second circumstance the Court had described as establishing the special duty exception. In the case before us, Ms. Wells argues that state statue allowing warrantless arrest in domestic abuse situations and written policies of the sheriff's department created a special duty. However, that

(continued...)

[W]e join the clear majority of courts and conclude that statutes pertaining to drunk driving and public intoxication, do not, in conjunction with statutes authorizing warrantless arrests, give rise to a "special-duty" of care where a plaintiff alleges that the police officer failed to arrest or detain an alleged drunk driver.

*Ezell*, 902 S.W.2d at 403.

In *Hurd v. Woolfork*, 959 S.W.2d 578, (Tenn. Ct. App. 1997), this court concluded that the public duty doctrine was applicable to shield a sheriff and county from liability resulting from negligent failure to promptly and properly process an arrest warrant. *Id*. at 581. The individual who was the subject of the warrant had been charged with aggravated rape. *Id*. at 580. Neighbors had informed the police of the suspect's continuing course of conduct that threatened members of the neighborhood. *Id*. Before the police executed the arrest warrant, the suspect brutally murdered two of his neighbors. *Id*. The court found:

A sheriff's duty to keep the peace, however, includes the execution of arrest warrants and is a public duty, "not owed to any individual in particular." *Ezell*, 902 S.W.2d at 397. Under the circumstances of this case, therefore, the public duty doctrine bars the Plaintiffs' present actions against Sheriff Woolfork and Madison County.

*Id*. at 781.

However, in *Matthews v. Pickett County*, *supra*, the Supreme Court found that the special duty exception applied. In that case, the plaintiff had obtained a protective order prohibiting her estranged husband from coming about her and "specifically from abusing threatening to abuse the petitioner, or committing any acts of violence upon the petitioner." The night before the hearing on their pending divorce, the husband threatened to kill the plaintiff, attempted to break into her home, and set off firecrackers under her propane tank. The plaintiff telephoned the sheriff's department for help three times and was assured someone was coming. Her calls ceased when her estranged husband severed her telephone line.

The deputies arrived, spoke to the husband, but did not arrest him, although a warrantless arrest for violation of the protective order was authorized by statute. Neither deputy thought they could arrest the husband without a warrant. They took the wife to the court house to swear out a warrant for the husband's arrest, where they found out they did not need a warrant. They took the wife back to her house to discover her car had been riddled with bullets. They then escorted her out of the county.

---

[11](...continued)
argument is not made to support the special duty exception under the second of the circumstances announced in Ezell. To the contrary, Ms. Wells specifically states she relies on the first circumstance.

A cousin of one of the deputies was left to watch the plaintiff's house. He saw the husband return to the house with a large container and leave without it. When the deputies returned to pick up the cousin, they saw the husband leaving, but did not stop, question, or arrest him. They did not examine the house closely. The plaintiff's house burned to the ground after the deputies left. *Matthews*, 996 S.W.2d at 163-64.

The Court found that the protective order the wife had gotten created a special duty. 996 S.W.2d at 165. "The order of protection in this case was not issued for the public's protection in general. The order of protection specifically identified [the plaintiff] and was issued solely for the purpose of protecting her." *Id.* The Court further found that the plaintiff relied on the order of protection, calling the sheriff's office and asking for protection pursuant to the order. *Id.*

Although the Court explained its conclusion largely on the basis of the relationship created by the protective order and by the plaintiff's reliance on that order, we note that the Court also stated that it was *Ezell's* first set of circumstances establishing the special duty exception that applied to the facts presented, *i.e.*, that the public official affirmatively undertakes to protect the plaintiff. *Id.* at 165. We think the facts in *Matthews* showed that the deputies acted in affirmatively undertaking to protect the plaintiff: coming to her house, taking her to the courthouse, escorting her to safety, and leaving her house watched. They took actions, and the plaintiff relied on those actions. The Sixth Circuit has given a similar interpretation to the *Matthews* holding:

> In *Matthews*, it was not the mere existence of the order of protection that created the special relationship. Rather, a special relationship was created in Matthews because the defendant's police officers offered to protect the plaintiff in response to her request for assistance after she was threatened by her husband.

*Jones v. Union County*, 296 F.3d 417, 429 (6th Cir. 2002).[12] In any event, in the case before us, there was no existing order of protection and no order keeping Mr. Carr away from Matthew. In fact, Ms. Wells had allowed Matthew to stay with Mr. Carr.

Based on these authorities, we must conclude that Ms. Wells has not alleged facts that would support the application of the special duty exception. The complaint does not include any allegation of any action that Deputy Snow affirmatively undertook to protect Matthew. To the contrary, it is his failure to act that Ms. Wells really complains of. Specifically, Ms. Wells alleges in her complaint:

> Deputy W. T. Snow told Kim Wells to not worry about Matthew Wells, that he would take care of Matthew Wells and that based on his experience and training in domestic abuse cases, Paul Carr would not harm Matthew Wells, that Matthew Wells would be safe with Paul Carr and that he would serve Paul Carr with an arrest

---

[12]Since the Sixth Circuit also stated that whatever duty may be found to exist under Tennessee tort law was irrelevant to the question before it, the quoted language could appropriately be characterized as *dicta*.

warrant the next morning before Paul Carr went to work, at which time he would get Matthew Wells. . . . Deputy W. T. Snow assured Kim Wells that Matthew Wells would be safe with Paul Carr until that time.

These allegations, taken as true, do not establish the special duty exception described in *Ezell* simply because they describe solely what the deputy **told** Ms. Wells. The relevant special duty exception expressly requires that the officers undertake to protect the plaintiff "by their actions." It is not alleged that Deputy Snow took any **action** to affirmatively undertake to protect Matthew Wells. As explained earlier, our Supreme Court specifically chose not to adopt a standard that include promises, assurances, or any other verbal communication. We cannot ignore that Court's intentional inclusion of a requirement that the governmental employee or law enforcement officer take some action.

In this case, while he told Ms. Wells not to worry, Deputy Snow simply gave Ms. Wells his view or opinion of the situation and explained how he planned to handle it in order to take care of Matthew. He was mistaken, and the consequences were tragic. However, if we were to find that Deputy Snow's words created a special duty that overcame the public duty doctrine, little would remain of that doctrine. Almost any reassuring communication by a police officer to a potential victim or the victim's family would remove the protection. The formulation adopted by our Supreme Court does not rest on promises or verbal assurances, and words alone will not create an exception to the public duty doctrine.

Because no action by Deputy Snow affirmatively undertaking to protect Matthew was alleged, the special duty exception is not present. Consequently, the public duty doctrine precludes liability and the action was properly dismissed.

We affirm the trial court. Costs are taxed to appellant, Kim Wells.

_____
PATRICIA J. COTTRELL, JUDGE