IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 1, 2024 Session

## ALICIA FRANKLIN v. CITY OF MEMPHIS, TENNESSEE

**Appeal from the Circuit Court for Shelby County**
**No. CT-3860-22      Mary L. Wagner, Judge**

_____

**No. W2023-01142-COA-R3-CV**

_____

A crime victim filed a tort action against a city under the Governmental Tort Liability Act, alleging police misconduct. Arguing that it was immune from liability for the alleged misconduct, the city moved to dismiss the complaint. The trial court dismissed the complaint with prejudice. We conclude that the city is immune from liability for the asserted negligence under the public duty doctrine and that the allegations in the complaint do not support application of the special duty exception. So we affirm the dismissal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Gary K. Smith, Karen M. Campbell, Jeffrey S. Rosenblum, and Matthew May, Memphis, Tennessee, for the appellant, Alicia Franklin.

Tannera G. Gibson, Jon P. Lakey, and Lani D. Lester, Memphis, Tennessee, for the appellee, City of Memphis.

## OPINION

### I.

#### A.

On September 21, 2021, Cleotha Abston a/k/a Cleotha Henderson kidnapped and raped Alicia Franklin at gunpoint. About a year later, Ms. Franklin filed a tort action

against the City of Memphis, Tennessee. She alleged that the Memphis police department's failure to conduct an adequate investigation of the crime and to use available evidence to identify and arrest her assailant before he committed another violent felony caused her emotional and physical injuries, including being raped. The operative complaint[1] alleged that the City of Memphis was liable for its employees' negligent and reckless conduct under the Governmental Tort Liability Act ("GTLA"). *See* Tenn. Code Ann. § 29-20-205 (2024).

According to the complaint, Ms. Franklin reported the crime to authorities immediately after the perpetrator left the scene. She was "directed to submit to a forensic medical examination," during which a "sexual assault kit" was gathered. A sexual assault kit includes physical evidence from the victim that can be tested for DNA from the suspect. The perpetrator's DNA was "already on file and reasonably accessible" to investigators because he had previously committed a violent felony.

Shortly after Ms. Franklin's report, police officers accompanied her to the crime scene. Ms. Franklin alleged that they processed the scene but collected no direct physical evidence. She provided the officers with several clues as to the perpetrator's identity, such as the name he gave her, the car he drove, and a telephone number. She also told the officers that she believed he had committed similar violent acts before.

Early in the investigation, police officers questioned a woman who lived near the crime scene. Ms. Franklin alleged that the information obtained from this woman incriminated the woman's boyfriend, Cleotha Abston.

Around this same time, the officers showed Ms. Franklin photos of several potential suspects, including Cleotha Abston. Ms. Franklin identified Cleotha Abston "as the one who looked most like her assailant."

A couple of days later, the officers submitted Ms. Franklin's sexual assault kit to the Tennessee Bureau of Investigation ("TBI"). Although they could have requested expedited processing, they did not. Nor did they give the TBI any additional information about the case or a potential suspect.

Ms. Franklin alleged that the police knew or should have known sufficient information to establish probable cause for an arrest even without testing the sexual assault kit. But they failed to make an arrest. A few months later, Ms. Franklin called

---

[1] Ms. Franklin filed an amended complaint shortly after the original filing. *See* TENN. R. CIV. P. 15.01.

the police department for an update on her case. She was told that the police had no updated information to share.

In due course, the TBI processed the sexual assault kit from Ms. Franklin's case. Nearly a year after the crime was committed, a TBI scientist matched DNA from the kit to Cleotha Abston. Within days, Cleotha Abston was indicted on multiple charges in connection with the rape of Ms. Franklin. But by then, he had already kidnapped and murdered another woman.

B.

The City filed a motion to dismiss the complaint for failure to state a claim. *See* TENN. R. CIV. P. 12.02(6). It argued that the facts alleged in the complaint did not establish a cognizable duty of care, a breach, or causation—all necessary elements of a negligence claim. It also asserted that sovereign immunity under either the GTLA or the public duty doctrine barred Ms. Franklin's action. Alternatively, the City moved to strike "certain immaterial, impertinent and scandalous allegations" from the complaint.

Ms. Franklin disagreed with the City's assessment. In her view, the complaint contained sufficient factual allegations to state a claim for negligence. She conceded that the GTLA did not waive immunity for recklessness. *See Lawson v. Hawkins Cnty.*, 661 S.W.3d 54, 63 (Tenn. 2023). But she maintained that the GTLA did remove immunity for the negligence alleged in the complaint. She also asserted that the special duty exception negated immunity under the public duty doctrine.

The trial court granted the City's motion and dismissed the complaint with prejudice. Because the complaint failed to allege any negligent conduct that occurred before the rape, the court dismissed the claim that the City's negligence caused the underlying crime. Otherwise, it found that the complaint contained sufficient factual allegations to state a claim for negligence. The court dismissed the reckless misconduct claim based on the GTLA. But it ruled that the GTLA did not mandate dismissal of Ms. Franklin's negligence claim. Viewed liberally, the alleged misconduct supporting the negligence claim could be operational.[2] Still, the alleged misconduct concerned breach of a public duty. Because the allegations in the complaint did not establish a basis for application of the special duty exception, the court dismissed the negligence claim.

---

[2] Courts "determine[] which acts are entitled to immunity by distinguishing those performed at the 'planning' level from those performed at the 'operational' level." *Bowers ex rel. Bowers v. City of Chattanooga*, 826 S.W.2d 427, 430 (Tenn. 1992); *see also* Tenn. Code Ann. § 29-20-205(1) (removing immunity for negligent conduct "except if the injury arises out of . . . [t]he exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused").

3

Before the dismissal order was final, Ms. Franklin moved to alter or amend the judgment and to amend the complaint. *See* TENN. R. CIV. P. 59.04, 15.01. She argued that the timing of the Tennessee Supreme Court's decision in *Lawson v. Hawkins County* put her at a disadvantage, that newly obtained evidence warranted revision of the court's previous ruling, and that the court committed a clear error of law in its analysis of the public duty doctrine. Alternatively, she maintained that it was time to reject the public duty doctrine in Tennessee. The court denied Ms. Franklin's requests.

## II.

On appeal, Ms. Franklin argues that the trial court erred in dismissing the complaint and denying her post-judgment motions. The City maintains that the trial court's decision to dismiss the complaint based on the public duty doctrine was correct. But if not, the City contends that we should affirm the dismissal on one or more of the other grounds advanced in its motion to dismiss.[3]

A Rule 12.02(6) motion "challenges only the legal sufficiency of the complaint." *Webb v. Nashville Area Habitat for Human., Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). Thus, "[t]he resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone." *Id.* It does not challenge the strength of the plaintiff's proof or evidence. *Id.*

When faced with this type of motion, the court must "construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences." *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002). A complaint "need not contain detailed allegations of all the facts giving rise to the claim," but it "must contain sufficient factual allegations to articulate a claim for relief." *Webb*, 346 S.W.3d at 427 (quoting *Abshure v. Methodist Healthcare-Memphis Hosps.*, 325 S.W.3d 98, 103-04 (Tenn. 2010)). The complaint should not be dismissed "unless it appears that the plaintiff can establish no facts supporting the claim that would warrant relief." *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999). This determination presents a question of law, which we review de novo, with no presumption of correctness. *Id.*

---

[3] Because we conclude that the trial court properly dismissed the complaint based on the public duty doctrine, we do not reach the City's alternative arguments in support of the dismissal.

4

## A.

Ms. Franklin challenges the trial court's conclusion that the public duty doctrine bars her negligence claim. The public duty doctrine is an affirmative defense. *Chase v. City of Memphis*, 971 S.W.2d 380, 385 (Tenn. 1998). Even so, dismissal is an appropriate remedy when "an affirmative defense clearly and unequivocally appears on the face of the complaint." *Anthony v. Tidwell*, 560 S.W.2d 908, 909 (Tenn. 1977); *see Ezell v. Cockrell*, 902 S.W.2d 394, 403 (Tenn. 1995) (affirming dismissal because "[t]he plaintiff's allegations d[id] not support application of a 'special-duty' of care"). Thus, a Rule 12.02(6) motion may "be used as a vehicle to assert an affirmative defense" when the allegations in the complaint "show that an affirmative defense exists and that this defense legally defeats the claim for relief." *Jackson v. Smith*, 387 S.W.3d 486, 491-92 (Tenn. 2012).

When a municipality asserts sovereign immunity, the "threshold question is whether immunity has been removed under the [GTLA]." *Lawson*, 661 S.W.3d at 60; *Chase*, 971 S.W.2d at 385 (directing courts to "first look to the GTLA"). If the GTLA does not remove immunity, the inquiry ends. *Lawson*, 661 S.W.3d at 60 ("We need not consider the public-duty doctrine or its exceptions unless we first conclude that the Act waives immunity."); *Matthews v. Pickett Cnty.*, 996 S.W.2d 162, 164-65 (Tenn. 1999) ("The public duty doctrine, however, is only viable as a defense to liability when immunity has been removed under the GTLA."). Here, the trial court ruled that the GTLA waived immunity for the negligent acts of the police department because the alleged acts were operational, not discretionary. *See* Tenn. Code Ann. § 29-20-205(1).

Assuming the trial court's determination was correct, the next consideration is the public duty doctrine. *Chase*, 971 S.W.2d at 385. The public duty doctrine "provide[s] an additional layer of defense to acts or omissions not immune under the GTLA." *Matthews*, 996 S.W.2d at 165. It "shields governmental entities and their employees from 'suits for injuries that are caused by the . . . breach of a duty owed to the public at large.'" *Lawson*, 661 S.W.3d at 60 (quoting *Ezell*, 902 S.W.2d at 397). The duties alleged in the complaint—to protect a citizen from harm and to arrest a suspected criminal—are public duties. *See Ezell*, 902 S.W.2d at 401 (duty to detain suspected drunk driver); *Kimble v. Dyer Cnty.*, No. W2019-02042-COA-R3-CV, 2020 WL 7389381, at *5 (Tenn. Ct. App. Dec. 16, 2020) (duty to warn motorists of hazardous road condition); *Fleming v. City of Memphis*, No. W2018-00984-COA-R3-CV, 2019 WL 1040389, at *6 (Tenn. Ct. App. Mar. 5, 2019) (duty to protect citizens from dangerous animals); *Holt v. City of Fayetteville*, No. M2014-02573-COA-R3-CV, 2016 WL 1045537, at *4 (Tenn. Ct. App. Mar. 15, 2016) ("The decision to arrest a suspect and properly secure him or her is a duty owed to the public at large."); *Hurd v. Woolfork*, 959 S.W.2d 578, 581 (Tenn. Ct. App. 1997) (reasoning that the "duty to keep the peace . . . includes the execution of arrest warrants and is a public duty"). So unless the allegations

5

in the complaint support application of a special duty of care, the public duty doctrine bars Ms. Franklin's negligence claim.

Our supreme court has adopted three scenarios that justify application of a special duty of care. *Ezell*, 902 S.W.2d at 402. Ms. Franklin relies on two. A special duty of care may exist if the "officials, by their actions, affirmatively undert[ook] to protect [her], and [she] relie[d] upon the undertaking" or if the complaint "alleges a cause of action involving intent, malice, or reckless misconduct." *Id.*

The trial court determined that the first scenario could not apply because the complaint failed to allege an affirmative act and reliance. Ms. Franklin insists that she alleged both. As she points out, the complaint alleged that the police department directed her to submit to a forensic medical examination to gather physical evidence of the crime. And she complied with this directive. But not every action by a police officer satisfies the exception's criteria. *See Hurd v. Flores*, 221 S.W.3d 14, 28-29 (Tenn. Ct. App. 2006). The formulation adopted by our supreme court requires an affirmative undertaking to protect the plaintiff. *Ezell*, 902 S.W.2d at 402; *see, e.g.*, *Matthews*, 996 S.W.2d at 165 (order of protection); *Chase*, 971 S.W.2d at 385 (animal shelter undertook to protect the plaintiff from dangerous animals). The alleged directive does not meet that standard. It does not indicate that the police department assumed a special duty to protect Ms. Franklin in particular. *See Holt*, 2016 WL 1045537 at *5 (explaining that for this scenario to apply, the special "duty must be particular to the Plaintiff[], not to a class of individuals of which Plaintiff[] happen[s] to be [a] member[]"). So even if the complaint does allege reliance, as Ms. Franklin contends, it does not support this method of establishing the special duty exception.

Although the trial court recognized that the complaint alleged a cause of action involving reckless misconduct, it rejected Ms. Franklin's argument that she established a special duty of care. The court reasoned that "[t]he special duty exception . . . cannot be used to remove immunity afforded by the GTLA." *Chase*, 971 S.W.2d at 385. And the GTLA provides immunity to governmental entities for the reckless misconduct of their employees. *Lawson*, 661 S.W.3d at 64. So "based upon the law as it exists today," the court ruled that "Ms. Franklin cannot apply the special duty exception for recklessness."

Ms. Franklin contends that her negligence claim involves allegations of reckless misconduct which can be used to negate immunity under the public duty doctrine. Ms. Franklin misapprehends the import of our supreme court's decision in *Lawson v. Hawkins County*. The question presented in *Lawson* was whether the GTLA allows "a plaintiff to sue a governmental entity for employee conduct that exceeds mere negligence." *Lawson*, 661 S.W.3d at 58. The supreme court's answer was "no." *Id.* at 64. It held that the GTLA only waived immunity for "ordinary negligence, not gross negligence or recklessness." *Id.* at 64. In so doing, the court acknowledged that its

6

holding would restrict the application of the special duty exception in tort actions against municipalities. *See id.* at 68. Although this acknowledgment could be viewed as dicta, it is a strong indication of the supreme court's view. And we are bound to follow the supreme court's lead. *Barger v. Brock*, 535 S.W.2d 337, 340 (Tenn. 1976). Because Ms. Franklin cannot assert a claim for reckless misconduct against the City, she cannot avail herself of this method of satisfying the special duty exception.

B.

Ms. Franklin's remaining issues involve the trial court's denial of her combined motion to alter or amend the dismissal and for permission to file an amended complaint. "[O]nce a judgment dismissing a case has been entered, the plaintiff cannot seek to amend [the] complaint without first convincing the trial court to set aside its dismissal." *Lee v. State Volunteer Mut. Ins. Co., Inc.*, No. E2002-03127-COA-R3-CV, 2005 WL 123492, at *11 (Tenn. Ct. App. Jan. 21, 2005). To that end, Ms. Franklin moved to set aside the dismissal under Tennessee Rule of Civil Procedure 59.04. A Rule 59.04 motion "provide[s] the trial court with an opportunity to correct errors before the judgment becomes final." *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005). It may "be granted when the controlling law changes before the judgment becomes final; when previously unavailable evidence becomes available; or to correct a clear error of law or to prevent injustice." *Id.*

We review the trial court's decision for an abuse of discretion. *Harmon v. Hickman Cmty. Healthcare Servs., Inc.*, 594 S.W.3d 297, 305 (Tenn. 2020). A court abuses its discretion when it applies the wrong legal standard, reaches "an illogical or unreasonable decision," or bases its decision "on a clearly erroneous assessment of the evidence." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

We discern no abuse of discretion in the court's refusal to set aside the dismissal. We have already addressed Ms. Franklin's challenge to the trial court's analysis of the public duty doctrine and its exceptions. And the supreme court's release of the *Lawson* decision does not provide a basis for setting aside the dismissal. *Lawson* did not change the controlling law; it clarified the plain meaning of the GTLA. *See Haynes v. Perry Cnty.*, No. M2020-01448-COA-R3-CV, 2022 WL 1210462, at *4 (Tenn. Ct. App. Apr. 25, 2022) (recognizing that "the GTLA only removes sovereign immunity for negligence, not recklessness"); *Doe v. Pedigo*, No. E2002-01311-COA-R3-CV, 2003 WL 21516220, at *2 (Tenn. Ct. App. June 30, 2003) ("The GTLA, by its express terms, removes liability only for 'injury proximately caused by a negligent act or omission.'" (quoting Tenn. Code Ann. § 29-20-205)).

Nor can we fault the court for refusing to set aside its dismissal order based on Ms. Franklin's newly obtained evidence. She submitted an affidavit from the

perpetrator's former girlfriend, who gave additional details about her interactions with the police during the initial investigation. To Ms. Franklin, the new evidence suggested that the police department may have been actively protecting her assailant and avoiding execution of outstanding warrants for his arrest. But the discovery of new evidence does not warrant revision of a decision based on "an examination of the pleadings alone." *Webb*, 346 S.W.3d at 426.

This is especially true when, as here, the evidence would not have changed the outcome. While leave to file an amended pleading should be freely given when justice so requires, "[t]rial courts are not required to grant a motion to amend if the amendment would be futile." *Runions v. Jackson-Madison Cnty. Gen. Hosp. Dist.*, 549 S.W.3d 77, 84-85 (Tenn. 2018); *see* TENN. R. CIV. P. 15.01. Ms. Franklin contends that the new evidence supports her claim that the City's negligence caused her rape and bolsters her allegations of reckless misconduct. But "the execution of arrest warrants . . . is a public duty." *Woolfork*, 959 S.W.2d at 581. And Ms. Franklin cannot rely on her allegations of reckless misconduct to defeat immunity under the public duty doctrine. *See Lawson*, 661 S.W.3d at 68. Without any allegations to support application of the special duty exception, the proposed amendment would be futile.

Alternatively, Ms. Franklin asked the court to reject the public duty doctrine altogether. As it now stands, the public duty doctrine remains viable in Tennessee. *Id.* at 60. Decisions of our supreme court are binding on the lower courts. *Barger*, 535 S.W.2d at 340. It is the province of our supreme court, not the trial court or even this Court, to "abolish obsolete common-law doctrines." *Cary v. Cary*, 937 S.W.2d 777, 781 (Tenn. 1996); *State v. Thomas*, 687 S.W.3d 223, 239 (Tenn. 2024); *Hodge v. Craig*, 382 S.W.3d 325, 337 (Tenn. 2012) (recognizing the supreme court's "power to develop and adapt common law principles and their application").

## III.

We conclude that the City of Memphis is immune from liability based on the public duty doctrine and that the allegations in the complaint do not support application of the special duty exception. We discern no abuse of discretion in the court's denial of Ms. Franklin's motion to alter or amend the judgment and to file an amended complaint. So we affirm.

_____s/ W. Neal McBrayer_____
W. NEAL MCBRAYER, JUDGE

8