**Roy Fred HURD, et al.**

v.

**Cristian FLORES, et al.**

Court of Appeals of Tennessee, Western Section, at Nashville.

March 31, 2006 Session.

June 13, 2006.

Application for Permission to Appeal Denied by Supreme Court Nov. 6, 2006.

---

Aldo J. Stolte, Nashville, TN, for Appellants.

John D. Kitch, Nashville, TN, for Appellee Smith County.

James D. Madewell, Cookeville, TN, for Appellee, Nationwide Insurance Company (Unnamed Defendant).

Michael P. Mills, Nashville, TN, for Appellees, Doug Clemmons and Clemmons Wrecker Service.

## OPINION

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

This case involves the trial court's grant of summary judgment to the defendants in a lawsuit filed in relation to an automobile accident. The plaintiffs are the parents of a daughter who, while traveling along Interstate 40 in Smith County, Tennessee, became stuck in the mud alongside the interstate. A deputy of the Smith County Sheriff's Department responded to the scene and summoned a wrecker to remove the vehicle. While traveling to an ATM machine to obtain the money necessary to pay the wrecker owner for his services, their daughter pulled her car to the shoulder of the interstate near an interstate crossover, which the wrecker owner and the deputy had used to reverse directions on the interstate. After waiting for a few minutes, their daughter, for unknown reasons, pulled into the path of an oncoming vehicle. The resulting collision killed their daughter and the driver of the other vehicle, who happened to be an uninsured motorist. The parents filed a lawsuit alleging common law negligence on the part of the uninsured motorist, the county for the actions of the deputy, and the owner of the wrecker service. Pursuant to statute, the parents also served notice of the lawsuit on their uninsured motorist carrier. The trial court subsequently entered an order dismissing the uninsured motorist from the lawsuit for insufficient service of process. The remaining defendants, including unnamed insurance carrier, moved for summary judgment. The plaintiffs did not oppose the grant of summary judgment to the uninsured motorist carrier. The trial court ultimately granted summary judgment to the county and the owner of the wrecker service holding that they owed no duty of care to the decedent as a matter of law. The parents appealed the grants of summary judgment to the defendants to this Court. As for the grants of summary judgment to the owner of the wrecker service and the county, we affirm the trial court's rulings. As for the Appellant's issues relating to the uninsured motorist carrier, we find that these issues are not justiciable under the doctrine of mootness.

## I.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On November 10, 2002, Carrie Hurd ("Decedent") was traveling eastbound on Interstate 40 at approximately 11:30 p.m. when she pulled her vehicle onto the shoulder of Interstate 40 in Smith County, Tennessee. The Decedent brought her vehicle to rest in an unpaved area along the shoulder where it became stuck in the mud. Deputy Garrett Flatt ("Deputy Flatt") of the Smith County Sheriff's Department was at the Keystop Restaurant located at exit 258 just off of Interstate 40 when his

dispatcher sent him to investigate a vehicle stuck alongside Interstate 40. Deputy Flatt and Officer Shannon Harris of the Gordonsville Police Department arrived at the scene shortly thereafter. After assessing the situation, Deputy Flatt asked his dispatcher to send a tow truck to remove the Decedent's vehicle from the mud.

Larry Douglas Clemmons, owner of Clemmons Wrecker Service (collectively referred to as "Clemmons"), responded to the call. After he removed the Decedent's vehicle from the mud, the Decedent informed Clemmons that she did not have any cash with which to pay him for his services. The Decedent offered to pay with her credit card or ATM card, but Clemmons did not have the ability to accept those forms of payment. Clemmons did, however, agree to meet the Decedent at an ATM machine to recover payment for his services. Clemmons, the Decedent, and Deputy Flatt began discussing the location of the nearest ATM machine, which they determined to be the one located at the Keystop Restaurant in the direction opposite the one the Decedent had been traveling. According to Clemmons, the Decedent stated that she was aware of the location of the Keystop Restaurant. Accordingly, Clemmons and the Decedent agreed to meet at the Keystop Restaurant to conclude their transaction.

Clemmons returned to his tow truck and pulled onto Interstate 40 headed eastbound. The Decedent pulled her vehicle onto the interstate followed by Deputy Flatt. Deputy Flatt subsequently stated that, after the vehicles pulled onto the interstate, his involvement with the parties ended, and he returned to routine patrol. Neither Clemmons nor Deputy Flatt instructed the Decedent on the safest method for reversing directions on the interstate. Further, neither Clemmons nor Deputy Flatt expressly directed the Decedent to follow them to the Keystop Restaurant. According to Deputy Flatt, all three vehicles continued eastbound on Interstate 40 traveling within three to four car lengths of each other.

Approximately two and one-half miles from where the Decedent's vehicle became stuck is an emergency interstate crossover, which connects the eastbound and westbound lanes of Interstate 40. Upon reaching the crossover, Clemmons pulled his tow truck into the crossover in order to reverse directions on the interstate and head back toward the Keystop Restaurant. As Clemmons sat waiting for the westbound traffic to clear, which Deputy Flatt described as "heavy," Deputy Flatt pulled his patrol car partially into the crossover behind Clemmons. The Decedent pulled her vehicle onto the right-hand shoulder of Interstate 40 adjacent to the crossover and Deputy Flatt's vehicle. Deputy Flatt did not attempt to ascertain why the Decedent was parked alongside the interstate, nor did he attempt to prevent her from using the interstate crossover. After a few minutes passed, the Decedent, for unknown reasons, turned into the eastbound lane of traffic and into the path of a vehicle being operated by Cristian Flores ("Flores"). Flores's vehicle collided with the Decedent's vehicle, causing serious injuries to both drivers. The Decedent died as a result of her injuries while being transported to the hospital. Flores also died as a result of the injuries he sustained in the wreck. It was subsequently discovered that Flores was an uninsured motorist.

On September 29, 2003, the Decedent's parents, Roy Fred Hurd and Linda Louise Hurd (collectively the "Hurds" or "Appellants"), filed suit against Flores, Deputy Flatt, Smith County, and Clemmons in the Circuit Court of Smith County. Therein, the Hurds alleged the following: Flores was negligent in the operation of his vehi-

cle; Deputy Flatt was negligent for allowing the Decedent to use the interstate crossover; Smith County, by and through the actions of Deputy Flatt, was guilty of common law negligence for directing and allowing the Decedent to use the interstate crossover; and Clemmons was guilty of common law negligence for directing and allowing the Decedent to use the interstate crossover. The Hurds also served a copy of the complaint on Nationwide Insurance Company ("Nationwide"), their uninsured/underinsured motorist insurance carrier, pursuant to section 56–7–1201 *et seq.* of the Tennessee Code.

Deputy Flatt subsequently filed a motion asking to be dismissed from the lawsuit pursuant to Tennessee Rule of Civil Procedure 12.02(6) alleging that the Tennessee Governmental Tort Liability Act insulated him from personal liability, which the trial court subsequently granted. A motion also was filed on behalf of Flores seeking to dismiss him from the lawsuit citing insufficient service of process, which the trial court granted as well. The Hurds filed an amended complaint to which Nationwide, Clemmons, and Smith County each filed an answer in response. Shortly thereafter, Smith County, Clemmons, and Nationwide each filed a motion for summary judgment. In response to these motions, the Hurds sought leave to amend their complaint a second time, which the trial court granted.

After answering the amended complaint, Smith County and Clemmons filed their respective motions for summary judgment as to the amended complaint. On January 27, 2005, the trial court entered an order granting Smith County's motion for summary judgment holding that Smith County did not owe a duty of care to the Decedent as a matter of law. On February 2, 2005, the trial court entered an order granting Clemmons's motion for summary judgment

on the ground that he did not owe the Decedent a duty of care either. On February 3, 2005, the trial court entered an order granting Nationwide's motion for summary judgment as well. Thereafter, the Hurds filed separate notices expressing their intention to appeal the trial court's rulings regarding Clemmons and Smith County. On March 3, 2005, the trial court entered another order stating:

> There has been no proof that there are any other potential tortfeasors who might have contributed to the cause of the accident at issue or who might otherwise be apportioned any percentage of comparative fault.
>
> . . . .
>
> IT IS THEREFORE ORDERED that although the Motion for Summary Judgment by the Unnamed Defendant, Nationwide Insurance Company, is granted, any remaining Defendants may, nevertheless, attribute or apportion fault to the Defendant, Cristian Flores, and such defendants may raise the issue of comparative fault as to Mr. Flores before the trier of fact.

On April 1, 2005, the Hurds filed a notice of their intention to appeal the trial court's ruling regarding Nationwide.

On April 12, 2005, Nationwide filed a motion in this Court seeking to dismiss the appeal. Therein, Nationwide argued that the order granting it summary judgment was entered on February 3, 2005, and the Hurds did not file their notice of appeal in a timely manner. Given the language used by the trial court in the order of March 3, 2005, and the trial court's failure to direct the entry of a final judgment pursuant to Tennessee Rule of Civil Procedure 54.02 in that order, this Court entered an order directing the Hurds to obtain a final order from the trial court. On June 24, 2005, the trial court entered a final order in this case, wherein it ordered the following lan-

guage stricken from the March 3, 2005 order:

[A]lthough the Motion for Summary Judgment by the Unnamed Defendant, Nationwide Insurance Company, is granted, any remaining Defendants may, nevertheless, attribute or apportion fault to the Defendant, Cristian Flores, and such defendants may raise the issue of comparative fault as to Mr. Flores before the trier of fact.

In its place, the trial court inserted the following: "The Motion for Summary Judgment by the Unnamed Defendant, Nationwide Insurance Company/Cristian Flores, is GRANTED."

This Court also received the Hurds's motion to consolidate the notices of appeal filed in this case, which we construed as an indication of their belief that they had initiated three separate appeals in this case. This Court subsequently denied the motion and noted that, once the trial court entered a final judgment in this case, the prematurely filed notices of appeal had the effect of bringing this case before this Court as a single appeal.[1]

Now that this Court properly has jurisdiction of the case, we turn to the issues presented by the Hurds for our resolution, which we perceive to be as follows:

1. Whether the trial court erred when it granted summary judgment to Clemmons;

2. Whether the trial court erred when it granted summary judgment to Smith County; and

3. Whether the trial court is permitted to grant summary judgment to Nationwide on the issue of liability but allow the trier of fact to apportion fault against Flores, the uninsured motorist.

For the reasons set forth more fully herein, we affirm the decisions of the trial court in granting summary judgment to Clemmons and Smith County. Further, we find that the Appellants' issue relating to Nationwide is not justiciable under the doctrine of mootness.

## II.

## ANALYSIS

### A.

### *Summary Judgment*

The Hurds filed claims against Clemmons and Smith County asserting that their conduct on the night of the Decedent's death constituted common law negligence. In order to succeed on these claims, the Hurds have the burden of proving the following elements as to each defendant:

(1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal cause.

*Bradshaw v. Daniel,* 854 S.W.2d 865, 869 (Tenn.1993). In order to prevail on a motion for summary judgment, "the moving party could affirmatively negate an essential element of the nonmoving party's claim, i.e., a defendant in a negligence action would be entitled to summary judgment if he convinced the court that he owed no duty to the plaintiff." *Byrd v. Hall,* 847 S.W.2d 208, 216 n. 5 (Tenn.1993); *see also Lindsey v. Miami Dev. Corp.,* 689 S.W.2d 856, 859 (Tenn.1985). The trial court concluded that neither Clemmons nor Smith County owed the Decedent a duty of care in this case and, therefore,

---

1. "A prematurely filed notice of appeal shall be treated as filed after the entry of the judg- ment from which the appeal is taken and on the day thereof." TENN. R.APP. P. 4(d) (2005).

granted summary judgment to both defendants.

■■■ The review of a trial court's grant of summary judgment to a party presents a question of law, therefore, this Court will review such decisions de novo without affording a presumption of correctness to the trial court's decision. *Mooney v. Sneed*, 30 S.W.3d 304, 306 (Tenn. 2000). "Our task on appeal is to review the record to determine whether the requirements for granting summary judgment have been met." *Church v. Perales*, 39 S.W.3d 149, 157 (Tenn.Ct.App.2000) (citations omitted). To that end, this Court must employ the same familiar standards used by the trial court in deciding whether to grant summary judgment in the first instance. *Prince v. St. Thomas Hosp.*, 945 S.W.2d 731, 733 (Tenn.Ct.App.1996). The crucial question for this Court's consideration is whether Clemmons or Smith County owed a duty of care to the Decedent. "The existence or nonexistence of a duty owed to the plaintiff by the defendant is entirely a question of law for the court." *Bradshaw*, 854 S.W.2d at 869; *see also*

*Turner v. Jordan*, 957 S.W.2d 815, 818 (Tenn.1997).[2] Thus, if we determine that Clemmons and Smith County owed no duty of care to the Decedent as a matter of law, then the trial court acted correctly when it granted them summary judgment in this case.

### 1.

### The Grant of Summary Judgment to Clemmons

■■■ "[T]he imposition of a legal duty reflects society's contemporary policies and social requirements concerning the right of individuals and the general public to be protected from another's act or conduct." *Bradshaw*, 854 S.W.2d at 870 (citations omitted). "[A]ll persons have a duty to use reasonable care to refrain from conduct that will foreseeably cause injury to others." *Id.; see also Burroughs v. Magee*, 118 S.W.3d 323, 328 (Tenn.2003); *Doe v. Linder Constr. Co., Inc.*, 845 S.W.2d 173, 177 (Tenn.1992). "Duty is the legal obligation a defendant owes to a plaintiff to conform to a reasonable person stan-

---

**2.** In their brief filed on appeal, the Hurds naturally argue that Clemmons and Smith County owed a duty of care to the Decedent in this case. After setting forth their arguments as to duty, however, they go on to address whether Clemmons and Smith County breached the duty of care they claim each owed in this case, whether their actions were the cause in fact of the Decedent's death, whether their actions were the proximate cause of the Decedent's death, and whether the Decedent's conduct was an intervening cause absolving Clemmons and Smith County of liability.

"The determination of negligence claims involves mixed questions of law and fact." *Kelley v. Johnson*, 796 S.W.2d 155, 157 (Tenn.Ct. App. 1990). It is only after a duty on the part of the defendant has been established that the questions of breach and causation arise. *Leatherwood v. Wadley*, 121 S.W.3d 682, 694 (Tenn.Ct.App.2003). "[W]hether the defendant breached its duty and whether the

breach proximately caused the injury are generally questions decided by the trier of fact." *Kelley*, 796 S.W.2d at 157; *see also Haynes v. Hamilton County*, 883 S.W.2d 606, 612 (Tenn. 1994); *Fairbanks, Morse & Co. v. Gambill*, 142 Tenn. 633, 222 S.W. 5, 7 (1919); *Leatherwood*, 121 S.W.3d at 694. What constitutes a superseding or intervening cause likewise is a question of fact. *Haynes*, 883 S.W.2d at 612. "These questions become questions of law only when the facts and inferences drawn from the facts permit reasonable persons to reach only one conclusion." *Kelley*, 796 S.W.2d at 157 (citations omitted); *see also Fairbanks, Morse & Co.*, 222 S.W. at 7.

It is only after this Court ascertains whether Clemmons and Smith County owed a duty of care in this case that the other elements of the Hurds' negligence claims can be addressed. If a duty is held to be owed by each defendant, then the case ordinarily would need to be remanded for the trier of fact to address these remaining elements.

dard of care in order to protect against unreasonable risks of harm." *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn.2000); *see also McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn.1995). "A risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." *McCall*, 913 S.W.2d at 153 (citing RESTATEMENT (SECOND) OF TORTS § 291 (1964)).

■ "In determining whether a duty is owed in a particular case, we have generally used a balancing approach consistent with principles of fairness," *Turner v. Jordan*, 957 S.W.2d 815, 818 (Tenn.1997); *see also Burroughs*, 118 S.W.3d at 329, which takes into account the following:

> Several factors must be considered in determining whether a risk is an unreasonable one. Those factors include [ (1) ] the foreseeable probability of the harm or injury occurring; [ (2) ] the possible magnitude of the potential harm or injury; [ (3) ] the importance or social value of the activity engaged in by defendant; [ (4) ] the usefulness of the conduct to defendant; [ (5) ] the feasibility of alternative, safer conduct and the relative costs and burdens associated with that conduct; [ (6) ] the relative usefulness of the safer conduct; [ (7) ] and the relative safety of alternative conduct.

*McCall*, 913 S.W.2d at 153 (citing RESTATEMENT (SECOND) OF TORTS §§ 292, 293 (1964)). "Stated succinctly, a duty of reasonable care exists if defendant's conduct poses an unreasonable and foreseeable risk of harm to persons or property." *Id.; see also Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn.1998) ("In analyzing duty, the court must balance the foreseeability and gravity of the potential risk of harm to a plaintiff against the burden imposed on the defendant in protecting against that harm.").

■ Since this case comes to the Court after the trial court's grant of summary judgment to the defendant, the following facts, taken in the light most favorable to the plaintiff, *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 90 (Tenn.2000); *Byrd v. Hall*, 847 S.W.2d 208, 217 (Tenn.1993), must be taken as true: Clemmons responded to the call to remove the Decedent's vehicle from the mud; after removing her vehicle, she had no cash with which to pay him; Clemmons, Deputy Flatt, and the Decedent ascertained that the nearest ATM machine could be found at the Keystop Restaurant, which happened to be in the direction opposite from the Decedent's direction of travel; Clemmons and the Decedent agreed to meet at the Keystop Restaurant where the Decedent would tender payment; Clemmons did not expressly instruct the Decedent to follow him to the Keystop Restaurant; neither Clemmons nor Deputy Flatt told the Decedent that she would need to go to the next interchange to safely reverse directions on the interstate; neither Clemmons nor Deputy Flatt told the Decedent that she could not use the interstate crossover; Clemmons, the Decedent, and Deputy Flatt traveled within three to four car lengths of each other as they headed eastbound on Interstate 40; upon reaching the interstate crossover, Clemmons pulled into the crossover while the Decedent pulled to the right-hand shoulder of the interstate; after waiting for a few minutes, the Decedent pulled into the eastbound lane of travel and into the path of the vehicle being operated by Flores, resulting in her death. These facts are not disputed by the parties.

No Tennessee case expressly holds that a duty of care is owed under the aforementioned facts. The Hurds contend that

"Clemmons took the responsibility of leading Decedent Hurd to the Keystop [Restaurant] ATM, in order to ensure he would be paid." From the aforementioned facts, a trier of fact could infer that the Decedent was following Clemmons to the Keystop Restaurant. As such, the Hurds maintain that Clemmons "took upon himself the duty to guide Decedent Hurd to the Keystop [Restaurant] ATM with the assistance of Deputy Flatt." Relying on the balancing test discussed above, the Hurds point to the following to support their argument that this Court should find that a duty of care existed in this case: the Decedent was not familiar with the area and relied on Clemmons to guide her; the risk associated with using an interstate crossover is self-evident, which is why such conduct is prohibited by statute [3] and warned against in the Tennessee Driver's Manual; Clemmons could have instructed the Decedent to use the next interchange to reverse directions on the interstate or guided her to the next interchange, therefore, a safer alternative to using the interstate crossover existed; and the burden on Clemmons in carrying forth these alternatives was minimal in light of the risks associated with using an interstate crossover.

As additional support for their position on appeal, the Hurds point to a decision by the Eastern Section of this Court in *Martinez v. Martinez*, No. E2000–01990–COA–R3–CV, 2001 WL 256152, 2001 Tenn.App. LEXIS 168 (Tenn.Ct.App. Mar. 15, 2001) (no perm. app. filed). In *Martinez*, the plaintiff brought his vehicle to rest in the turning lane where he waited for the oncoming traffic to clear so that he could turn into a business establishment. *Id.* at *4, *2. While he waited in the turning lane, the oncoming traffic stopped, thereby preventing the plaintiff from entering the business. *Id.* When the vehicular traffic began to move, the defendant, who had been stopped in traffic near the entrance to the business, signaled for the plaintiff to turn in front of her. *Id.* As the plaintiff proceeded to turn in front of the defendant, another vehicle traveling in the lane alongside the defendant struck the plaintiff's vehicle. *Id.* at *4, *2–3. The trial court granted summary judgment to the defendant who signaled for the plaintiff to turn in front of her. *Id.* at *3 *3.

On appeal, this Court was asked to address an issue of first impression in this state; whether a driver who motions to another driver to turn in front of the signaling driver can be held liable in the event that an accident occurs. *Id.* at *1 *1. After examining numerous cases from other jurisdictions, this Court reversed the trial court's grant of summary judgment to the defendant, stating:

---

**3.** The Tennessee Code provides that it is unlawful for a person to:
 (1) Drive a vehicle over, upon, or across any curb, central dividing section, or other separation or dividing line on controlled-access facilities;
 (2) Make a left turn or a semicircular or U-turn except through an opening provided for that purpose in the dividing curb section, separation, or line;
 (3) Drive any vehicle except in the proper lane provided for that purpose and in the proper direction and to the right of the central dividing curb, separation section, or line; or

 (4) Drive any vehicle into the controlled-access facility from a local service road except through an opening provided for that purpose in the dividing curb, or dividing section or dividing line which separates such service road from the controlled access facility proper.
Tenn.Code Ann. § 54–16–108 (2004). Further, "[n]o person shall drive a vehicle onto or from any controlled-access roadway except at such entrances and exists as are established by public authority." *Id.* § 55–8–126.

[A] driver who signals to another driver that the way is clear for the other driver to turn left across all lanes of traffic proceeding in the opposite direction is guilty of negligence if he or she fails to exercise due care in ascertaining that the way is clear for the other driver's intended move.

*Id.* at \*4, 17. The Court went on state that "[n]othing in this opinion should be construed as a holding that the signaled driver, by virtue of the action of the signaling driver, is thereby relieved of the obligation to exercise due care for his or her own safety." *Id.* at \*4, \*19. Relying on this Court's holding in *Martinez*, the Hurds argue that a duty can be found to exist in the present case as a matter of law because Clemmons was attempting to guide the Decedent to use the interstate crossover. We do not agree.

The facts in *Martinez* are readily distinguishable from those presented in this case. Unlike the signaling defendant in *Martinez*, it is undisputed that Clemmons never signaled for the Decedent to move her vehicle from a position of relative safety into the path of an oncoming vehicle. Further, utilizing the aforementioned balancing test to determine whether a duty existed on the part of Clemmons in this case, we hold that he owed no duty of care under the facts presented in this appeal. While we have previously noted that the trier of fact could infer that the Decedent was following Clemmons to the Keystop Restaurant, the undisputed facts demonstrate that she did so of her own volition. Clemmons and the Decedent agreed to meet at the Keystop Restaurant so that the Decedent could use the ATM located there. Clemmons never told the Decedent to follow him to the Keystop Restaurant, and Clemmons had no control over the operation of the Decedent's vehicle during the journey. While

the risks associated with using an interstate crossover are great and the safer course of action would have been to use the next available interchange, Clemmons could not foresee that the Decedent would stop her vehicle on the shoulder of the interstate and then turn into the path of an oncoming vehicle. When a defendant could not have foreseen the resulting injury, no duty of care is held to arise. *Doe v. Linder Constr. Co., Inc.,* 845 S.W.2d 173, 178 (Tenn.1992). "It is a general rule of law that, in the absence of circumstances indicating otherwise, the operator of a motor vehicle has the right to assume, and to act on the assumption, that other users of the highway will obey the law and exercise due care." *Hampton v. Padgett,* 57 Tenn. App. 1, 414 S.W.2d 12, 15 (1967) (citations omitted).

The Appellants urge this Court to adopt a blanket rule that, if one driver assists another driver in the use of Tennessee's roadways, the assisting driver owes a duty of care to ensure that the aided driver arrives safely at his or her destination. To adopt the position espoused by the Appellants would be to place too heavy a burden on the defendant in this case, making him the insurer of the Decedent's safety for the entire journey. "Negligence is defined as the breach of a legal duty and where there is no legal duty between the person alleging injury and the defendant, there can be no actionable negligence." 65 C.J.S. *Negligence* § 32 (2000). Accordingly, we hold that the trial court did not err in awarding summary judgment to Clemmons as he owed no duty of care to the Decedent in this case.

### 2.

### The Grant of Summary Judgment to Smith County

The Tennessee Governmental Tort Liability Act ("GTLA") provides that, "[e]x-

cept as may be otherwise provided in this chapter, all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary." TENN.CODE ANN. § 29–20–201(a) (2000). "This general rule, however, is subject to several statutory exceptions." *Hill v. City of Germantown*, 31 S.W.3d 234, 236 (Tenn.2000); *see also* TENN.CODE ANN. §§ 29–20–201 to–207 (2000 & Supp.2005). "Before proceeding in an action against a governmental entity, the threshold issue of waiver of governmental immunity must be addressed." *Brown v. Hamilton County*, 126 S.W.3d 43, 46 (Tenn.Ct.App.2003).

The statutory exception at issue in this case provides, in relevant part, as follows:

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of:

> (1) the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused . . . .

TENN.CODE ANN. § 29–20–205(1) (2000). The trial court concluded that the actions of Deputy Flatt on the night of the Decedent's death were discretionary and that he owed no duty of care to the Decedent, therefore, Smith County retained its immunity under the Act. Thus, we must first determine whether Smith County may avail itself of the immunity provided by the Act. *See Chase v. City of Memphis*, 971 S.W.2d 380, 1998 Tenn. LEXIS 435, at *13 (Tenn. 1998); *Wells v. Hamblen County*, No. E2004–01968–COA–R3–CV, 2005 WL 2007197, at *2, 2005 Tenn.App. LEXIS 510, at *7 (Tenn.Ct.App. Aug. 22, 2005),

*cert. denied*, 2005 Tenn. LEXIS 1169, at *1 (Tenn. Dec. 19, 2005).

After Clemmons removed the Decedent's vehicle from the mud alongside Interstate 40 and the parties discussed the location of the nearest ATM, Deputy Flatt returned to his vehicle and pulled back onto Interstate 40 behind the Decedent. According to Deputy Flatt, he had returned to routine patrol at that point and had no further involvement with the Decedent. On appeal, the Hurds argue that Deputy Flatt, like Clemmons, undertook an affirmative duty to safely guide the Decedent to the Keystop Restaurant. Further, they contend that Deputy Flatt had a duty to prevent the Decedent from using the interstate crossover since doing so constitutes a violation of state law.

The GTLA does not define the term "discretionary function." *Brown*, 126 S.W.3d at 46. Recognizing this reality, our supreme formulated the following test:

> Under the planning-operational test, decisions that rise to the level of planning or policy-making are considered discretionary acts which do not give rise to tort liability, while decisions that are merely operational are not considered discretionary acts and, therefore, do not give rise to immunity.

*Bowers v. City of Chattanooga*, 826 S.W.2d 427, 430 (Tenn.1992). On appeal, the Hurds attempt to argue that Deputy Flatt's decision to allow the Decedent to use the interstate crossover does not amount to a "discretionary function," therefore, Smith County is unable to retain its immunity from suit under the GTLA. In support of this position, they cite to the following statement by our supreme court in *Bowers*:

> [A] decision resulting from a determination based on preexisting laws, regulations, policies, or standards, usually indicates that its maker is performing an

operational act. Similarly operational are those ad hoc decisions made by an individual or group not charged with the development of plans or policies. These operational acts, which often implement prior planning decisions, are not "discretionary functions" within the meaning of the Tennessee Governmental Tort Liability Act. In other words, "the discretionary function exception [will] not apply to a claim that government employees failed to comply with regulations or policies designed to guide their actions in a particular situation."

*Id.* at 431 (citation omitted). The Hurds argue, in essence, that Deputy Flatt's decision to forego enforcing the law that makes it illegal for a motorist to use an interstate crossover did not involve the development of policy for Smith County, but merely constituted a failure on his part to comply with already existing state law.

Based on the planning-operational test formulated by our supreme court in *Bowers*, we disagree with the trial court's conclusion that Deputy Flatt's actions on the night of the Decedent's death were discretionary in nature. Instead, we agree with the Hurds contention that Deputy Flatt's decision as to whether or not to enforce the state law prohibiting a motorist from using the interstate crossover constituted an operational decision and, therefore, does not qualify as a discretionary decision under the framework announced by our supreme court in *Bowers. See id.* at 432 (holding that a school bus driver's decision regarding where to stop the bus and drop of children was "an operational act not within the discretionary function exception to governmental immunity"). Although the Hurds are permitted to allege a cause

of action in negligence against Smith County for Deputy Flatt's actions in not stopping the Decedent from using the interstate crossover, our analysis does not end at that point.

 If a governmental entity loses its immunity under the Act, we must turn our attention to the applicability of the public duty doctrine. *Chase,* 971 S.W.2d at *385, 1998 Tenn. LEXIS 435, at *13. "As in any other negligence action, a plaintiff must establish the existence of a duty or standard of care in an action for negligence of a government employee." *Wells v. Hamblen County,* No. E2004–01968–COA–R3–CV, 2005 WL 2007197, at *3, 2005 Tenn.App. LEXIS 510, at *10 (Tenn. Ct.App. Aug. 22, 2005) (citing *Ezell v. Cockrell,* 902 S.W.2d 394, 397 (Tenn.1995)). In *Ezell v. Cockrell,* the Tennessee Supreme Court held that the public duty doctrine was not abolished by the enactment of the GTLA. *Ezell,* 902 S.W.2d at 401. The public duty doctrine constitutes an extra layer of protection that a governmental entity may assert as an affirmative defense when it is not otherwise protected by the immunity afforded under the GTLA. *Wells,* 2005 WL 2007197, at *2–32005 Tenn.App. LEXIS 510, at *7–8. "The public duty doctrine originated at common-law and shields a public employee from suits for injuries that are caused by the public employee's breach of a duty owed to the public at large." [4] *Ezell,* 902 S.W.2d at 397. As one authority states:

> [A]lthough it is well recognized at common law that a law enforcement officer may be held liable to persons injured in consequence of his failure to perform

---

**4.** While the doctrine is couched in terms that appear to afford protection to individual employees, the doctrine has been applied to shield governmental entities from liability as well. *See Ezell,* 902 S.W.2d at 404; *Wells,*

2005 WL 2007197, at *3 2005 Tenn.App. LEXIS 510, at *10 n. 6. Accordingly, Smith County may assert the doctrine in its defense even though Deputy Flatt has been dismissed from the lawsuit.

the duties of his office, and it is also settled that one of the duties of a law enforcement officer is to preserve the peace and arrest lawbreakers, it is nevertheless generally held that the specific duty to preserve the peace is one which the officer owes to the public generally, and not to particular individuals, and that the breach of such duty accordingly creates no liability on the part of the officer to an individual who was damaged by the lawbreaker's conduct. Rather, it is held, a law enforcement officer is amenable only to the public, and punishable only by indictment for the breach of his duty as conservator of the peace.

Robert A. Shapiro, Annotation, *Personal Liability of Policeman, Sheriff, or Similar Peace Officer or His Bond, for Injury Suffered as a Result of Failure to Enforce Law or Arrest Lawbreaker*, 41 A.L.R.3d 700, 702 (1972). Succinctly stated, the doctrine provides that private citizens cannot maintain an action against public officials or entities unless they are able to allege a special duty not owed to the public generally. *Ezell*, 902 S.W.2d at 397. Thus, a private citizen "must show the existence of a duty particular to him or her, as distinct from a duty owed to the public in general." *Wells*, 2005 WL 2007197, at *3–42005 Tenn.App. LEXIS 510, at *10–11.

Our supreme court noted several policy considerations in *Ezell*, particularly applicable to the law enforcement profession, that warrant this extra layer of protection, chiefly among them the following: it prevents the situation where law enforcement officials are placed in the untenable position of either insuring the personal safety of every member of the public or face a civil suit for damages; it recognizes that other administrative and political mechanisms exist, other than negligence actions, to ensure that individual officials are held accountable for dereliction of duty; and it

prevents "excessive court intervention into the governmental process by protecting the exercise of law enforcement discretion." *Ezell*, 902 S.W.2d at 398, 400–401.

There is an extra layer of analysis that warrants our consideration in this case. In *Ezell*, our supreme court also recognized "an exception to the rule of no-liability that applies where a 'special relationship' exists between the plaintiff and the public employee, which gives rise to a 'special duty' that is more particular than the duty owed by the employee to the public at large." *Ezell*, 902 S.W.2d at 401. "Where the special duty exception is found to apply, it operates to negate the public duty doctrine defense." *Wells*, 2005 WL 2007197, at *4 2005 Tenn.App. LEXIS 510, at *13 (citing *Matthews v. Pickett County*, 996 S.W.2d 162, 165 (Tenn.1999)). As our supreme court stated in *Ezell*, a special duty of care will be found to exist when:

1) officials, by their actions, affirmatively undertake to protect the plaintiff, and the plaintiff relies upon the undertaking; 2) a statute specifically provides for a cause of action against an official or municipality for injuries resulting to a particular class of individuals, of which the plaintiff is a member, from failure to enforce certain laws; or 3) the plaintiff alleges a cause of action involving intent, malice, or reckless misconduct.

*Ezell*, 902 S.W.2d at 402. Thus, without the protection afforded by the public duty doctrine and without the immunity afforded by the GTLA, a local governmental entity may remain liable for an employee's negligent acts.

In the instant case, the Hurds attempt to argue that Deputy Flatt had a duty to prevent their daughter from using the interstate crossover, which they allege constituted a violation of section 55–8–126 of the Tennessee Code. The Hurds do not

allege that the statute at issue provides for a cause of action in this case, or that Deputy Flatt engaged in intentional, malicious, or reckless conduct. Instead, they assert that, given the facts present in this case, Deputy Flatt affirmatively undertook an obligation to protect the Decedent. We cannot agree.

It is undisputed that Deputy Flatt never expressly told the Decedent to follow him to the Keystop Restaurant or to use the interstate crossover. Deputy Flatt stated that, after pulling away from the location where the Decedent's vehicle became stuck, he returned to routine patrol. While he did travel with the Decedent and Clemmons along Interstate 40 until they reached the interstate crossover, the undisputed facts demonstrate that Deputy Flatt did not lead the Decedent but followed her vehicle until they reached the interstate crossover. Moreover, there is nothing in the record to indicate that, upon reaching the interstate crossover, Deputy Flatt affirmatively undertook an obligation to protect the Decedent in the use of the interstate crossover, or that the Decedent relied on such undertaking. The Hurds have alleged nothing more than Deputy Flatt's refusal to enforce the applicable law, a duty which he owed to the public in general.[5] Thus, the Hurds are unable to avail themselves of the special duty exception, and the public duty doctrine remains applicable to this case. Accordingly, Deputy Flatt cannot be held to owe a duty to the Decedent, and the trial court was correct to award summary judgment to Smith County.

### B.

### *The Uninsured Motorist Carrier*

 During the course of the proceedings below, the trial court granted Flores' motion to dismiss the Hurds' claim against him due to insufficient service of process. Nationwide, the uninsured motorist carrier for the Hurds, also filed a motion for summary judgment in this case. The Hurds responded to this motion by stating:

In support of the instant motion, Plaintiffs would state and show that the proof to date has adduced no facts that would reasonably preclude granting this Defendant's Motion for Summary Judgment. Plaintiffs would respectfully assert that, based upon the Motion and Memorandum submitted in relation to this matter that the Defendant, Cristian Flores, not be assigned any portion of fault or comparative negligence as a matter of law.

The trial court, noting that the Hurds did not oppose Nationwide's motion for summary judgment, subsequently granted Nationwide's motion and dismissed the claims against it with prejudice.

Confusion resulted when the trial court entered another order reiterating the grant of summary judgment to Nationwide, but stated that the remaining defendants could attempt to apportion fault to Flores. When the case reached this

---

5. Our courts have reached this same result in similar cases where the plaintiff merely alleged a law enforcement officer's failure to arrest for a violation of a statute or to enforce the traffic laws of this state. *See, e.g., Ezell,* 902 S.W.2d at 402; *Wells,* 2005 WL 2007197, at *7–8 2005 Tenn.App. LEXIS 510, at *23–25; *Eldridge v. City of Trenton,* No. 02A01–9503–CV–00041, 1997 WL 527303, at *5–6, 1997 Tenn.App. LEXIS 573, at *13–15 (Tenn. Ct.App. Aug. 26, 1997) (no perm. app. filed); *Hurd v. Woolfork,* 959 S.W.2d 578, 583 (Tenn. Ct.App.1997); *Gardner v. Insura Prop. & Cas. Ins. Co.,* 956 S.W.2d 1, 3–4 (Tenn.Ct.App. 1997); *Cable v. Hamilton County,* No. 03A01–9107–CV–244, 1992 WL 33906, at *5–6, 1992 Tenn.App. LEXIS 201, at *14–15 (Tenn.Ct. App. Feb. 26, 1992) (no perm. app. filed); *Slate v. Akins,* 1984 Tenn.App. LEXIS 3026, at *10–12 (Tenn.Ct.App. July 24, 1984).

Court, we noted that the language selected by the trial court in its latest order appeared to create a lack of finality in the case. Accordingly, we ordered the Hurds to seek a final order from the trial court, and the trial court subsequently entered a final order disposing of the case. In the final order, the trial court struck the language used in the previous order and in its place inserted language simply granting summary judgment to Nationwide. As all the defendants had been granted summary judgment at this point, this Court exercised appellate jurisdiction over the case.

Section 56–7–1201 *et seq.* of the Tennessee Code governs uninsured motor vehicle coverage in this state and provides as follows:

> Any insured intending to rely on the coverage required by this part shall, if any action is instituted against the owner and operator of an uninsured motor vehicle, serve a copy of the process upon the insurance company issuing the policy in the manner prescribed by law, as though such insurance company were a party defendant. Such company shall thereafter have the right to file pleadings and take other action allowable by law in the name of the owner and operator of the uninsured motor vehicle or in its own name; provided, that nothing in this subsection shall prevent such owner or operator from employing counsel of the owner's own choice; and provided further, that the evidence of service upon the insurance carrier shall not be made a part of the record.

Tenn.Code Ann. § 56–7–1206(a) (2000). On appeal, the Hurds argue that the trial court erred when it granted summary judgment to Nationwide and allowed the apportionment of fault to Flores. Nationwide argues in response that this issue presently is moot. We agree.

The courts of this state "will decline to provide judicial relief in cases that do not involve genuine existing controversies requiring the adjudication of present rights." *Charter Lakeside Behavioral Health Sys. v. Tennessee Health Facilities Comm'n,* No. M1998–00985–COA–R3–CV, 2001 WL 72342, at *4, 2001 Tenn. App. LEXIS 58, at *14 (Tenn.Ct.App. Jan. 30, 2001) (citations omitted) (no perm. app. filed). "The doctrine of justiciability prompts courts to stay their hand in cases that do not involve a genuine and existing controversy requiring the present adjudication of present rights." *McIntyre v. Traughber,* 884 S.W.2d 134, 137 (Tenn.Ct. App.1994) (citations omitted). Accordingly, we will not render an opinion in an appeal which is dependent upon future events or involves a purely hypothetical or theoretical set of facts. *State v. Brown & Williamson Tobacco Corp.,* 18 S.W.3d 186, 193 (Tenn.2000).

The doctrine of mootness can be summarized in the following terms:

> Cases must be justiciable not only when they are first filed but must also remain justiciable throughout the entire course of the litigation, including the appeal. The concept of mootness deals with the circumstances that render a case no longer justiciable.
>
> A moot case is one that has lost its character as a present, live controversy. The central question in a mootness inquiry is whether changes in the circumstances existing at the beginning of the litigation have forestalled the need for meaningful relief. A case will generally be considered moot if it no longer serves as a means to provide relief to the prevailing party.

*McIntyre,* 884 S.W.2d at 137 (citations omitted). "Determining whether a claim has become moot is a question of law for the courts." *Charter Lakeside Behavioral*

*Health Sys.*, 2001 WL 72342, at *5 2001 Tenn.App. LEXIS 58, at *15–16.

The confusion generated by the language used in the trial court's original order has been alleviated by the subsequent entry of a final order by the trial court striking the language relied upon by the Hurds on appeal. The Hurds have not appealed the issue of whether the record contains any evidence to support a finding that Flores was negligent, thereby warranting an apportionment of fault against him in this case. In fact, the Hurds concede in there brief filed on appeal that "there are no genuine issues of material fact to demonstrate that Defendant Flores was negligent." Moreover, the Hurds, in response to Nationwide's motion for summary judgment below, expressly stated that they did not oppose the grant of the motion by the trial court. Given the facts in this case, the statutory scheme at issue would essentially assess liability against Nationwide under the policy only in the event that some level of fault were apportioned to Flores, the uninsured motorist. The Hurds concede that "it would be impossible to apportion fault against him by any trier of fact." In essence, the Hurds only quarrel with the trial court is that it granted summary judgment to Nationwide and stated that fault could be apportioned to Flores by any remaining defendants. The trial court subsequently alleviated this confusion by entering a final order striking this language from the order and simply granting summary judgment to Nationwide.[6] Accordingly, no controversy presently exists between Nationwide and the Hurds which would require an adjudication by this Court or the trial court. As such, this issue is not justiciable pursuant to the doctrine of mootness.[7]

## III.

## CONCLUSION

We hold that the Appellees, Smith County, Tennessee, Larry Douglas Clemmons, and Clemmons Wrecker Service, did not owe a duty of care to the Decedent, Carrie Elizabeth Hurd. Accordingly, the trial court did not err by granting the Appellees' motions for summary judgment. Further, we find the Appellants' issues relating to Appellee Nationwide Insurance Company to be moot, therefore, these issues are not justiciable. Costs of this appeal are to be taxed against the Appellants, Roy Fred Hurd and Linda Louise Hurd, and their surety, for which execution may issue if necessary.

---

6. At oral argument, counsel for the Hurds conceded that the trial court corrected the language in the order and alleviated their concern with the order. Counsel for the Hurds went on to argue, however, that this Court should take the opportunity to rule on an issue of first impression in this state, although doing so would have no direct bearing on the case before the Court. Further, counsel for the Hurds readily conceded that he was inviting this Court to render an advisory opinion on this issue. We decline such invitation.

7. Our courts have recognized several exceptions to the doctrine of mootness, two of the most common being (1) whether the issue is of such great public interest and importance to the administration of justice and (2) whether the issue is capable of repetition yet evades review. *McIntyre*, 884 S.W.2d at 137. Neither of these exceptions apply to the instant case.