IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 19, 2012 Session

## MAHMOUD AWAD MOHAMMAD
v.
## NAIRMAN FARAJ MERI

**Appeal from the Shelby County Circuit Court**
**No.   CT-005705-07  Gina C. Higgins, Judge**

**No. W2011-01593-COA-R3-CV - Filed May 11, 2012**

This post-divorce appeal concerns a one-time, one-week extension of parenting time.  The trial court granted the mother's petition to extend her parenting time from one week to two weeks for a vacation with her family.  After the mother's vacation was over, the father filed this appeal.  We dismiss the appeal on grounds of mootness.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal is Dismissed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Nick Rice, Memphis, Tennessee for Plaintiff/Appellant Mahmoud Awad Mohammad

Defendant/Appellee Nariman Faraj Meri, Cordova, Tennessee, *pro se*

**OPINION**

**FACTS AND PROCEEDINGS BELOW**

Plaintiff/Appellant Mahmoud Awad Mohammad ("Father") and Defendant/Appellee Nariman Faraj Meri ("Mother") were married in 1998, when Mother was 18 and Father was 30 years old.  Father resided in Jordan prior to the parties' marriage.  Mother was born in Michigan to a Palestinian family.  Both were raised in the Muslim tradition.  After the parties married, they lived in the United States.  Three daughters were born of the marriage.  At some point, the family moved to Memphis, Tennessee.

The record indicates that, during the marriage, Father was the breadwinner and Mother was a stay-at-home parent. Until 2004, Mother did not have a vehicle. After the parties separated in 2007, Mother began working at the children's school as a day care teacher. Father's divorce complaint was filed in 2007 in the Circuit Court of Shelby County, Tennessee. Subsequently, Mother counterclaimed for divorce. During the pendency of the divorce, the parties had a parenting schedule in which the children spent one week with one parent and the next week with the other parent.

The record shows that the divorce proceedings were acrimonious. Mother asserted that Father was physically abusive, controlling, and expected subservient behavior from her. Mother filed criminal charges against Father based on alleged physical abuse and threats to get someone to kill her. During the pendency of the divorce proceedings, Father made aggressive use of private investigators, DNA testing of Mother's personal items and bed linens, and took other measures to ferret out alleged promiscuous behavior by Mother.

In the divorce trial, Father and his extended family testified that Father is an excellent parent, criticized Mother's parenting, and said that the children do not need Mother. Father and his witnesses testified that Father questions the children about Mother's behavior, and Father admitted speaking in derogatory terms about Mother to their daughters. Father testified that he should be the primary residential parent, but he would allow their daughters to talk to Mother.

In April 2010, the trial court entered a divorce decree declaring the parties divorced pursuant to Tennessee Code Annotated § 36-4-129(b). The trial court left in place the parties' parenting schedule of one week with one parent and the next week with the other parent. It designated Mother as the primary residential parent, finding that she was more likely to encourage the children to have a close relationship with both parents. Mother was awarded rehabilitative alimony and child support.

After the parties' divorce, Mother's attorney withdrew from representing her; Mother thereafter represented herself. Also post-trial, the trial court agreed to return Mother's and Father's passports to them, which apparently had been held by the trial court during the pendency of the divorce proceedings. The trial court denied Father's motion to release the children's passports, and retained possession of them "pending further orders of the Court."

After a new trial judge was elected to the division of Circuit Court to which the parties' case was assigned, Father's counsel filed a lengthy motion to modify the parenting plan. He asked the new trial judge to designate Father as the primary residential parent and greatly reduce Mother's parenting time, hold Mother in contempt of court, enjoin Mother from placing the children in contact with an alleged paramour, require Mother to pay child support, and

require Mother to pay Father's attorney fees. The motion contained detailed allegations about purported incidents, apparently allegedly recounted by the parties' daughters, in which Mother and her alleged paramour engaged in sexual and inappropriate behavior, in the same vein as Father's allegations during the divorce proceedings. The trial court issued a temporary restraining order enjoining the alleged paramour from contact with the children, and conducted an *in camera* interview with the children, but did not otherwise grant Father's requests for relief. Father subsequently dismissed his other requests for relief.

On June 3, 2011, Mother filed a *pro se* petition with the trial court, seeking the trial court's permission for a one-time extended parenting time, to enable the children to accompany her on a vacation to Florida. Mother proposed departing with the children on June 11, 2011, and returning on June 24, 2011. The petition asserted that Mother had contacted Father to obtain his consent for the trip, but that Father had refused to consent to Mother's trip unless she agreed that Father could take the children out of the United States to the country of Jordan for two weeks, to visit Father's family. Mother's petition said that she had no problem allowing Father two weeks of vacation time with the children, but could not agree to allow Father to take the children out of the country to Jordan for fear that he would not return the children to the United States. Mother attached to her *pro se* petition materials indicating that Jordan is not a signatory to the Hague Convention, and if Father chose not to return the children to the United States, he could not be forced to do so.

In his response to Mother's petition, Father alleged that Mother's petition was in essence a request to modify the parties' parenting plan, and she had failed to communicate with Father regarding a proposed modification. Father also alleged that Mother did not provide him with adequate notice of her proposed modification to the parenting plan, and that Father was denied due process because Mother failed to allege any material change in circumstances as a basis for modification of the parenting plan. Father's response also stated:

> Petitioner wishes to extend her visitation time with the children to take a vacation with them to a location chosen specifically by her and is requesting the Court's assistance to do so. However, Respondent was willing to extend parenting time for the children's mother to take a trip of her choosing if she would just permit him to do the same. Father wishes to travel with the children for two weeks to Jordan to allow the children to spend time with their extended family. This would also be an educational and beneficial vacation for the children because they would be able to see and experience a new country. If Petitioner would agree to Respondent's travel plans, Respondent would be willing to agree to Mother's, thus eliminating the need for Court intervention and variation from the previous Court Orders.

The trial court held a hearing on Mother's petition on June 10, 2011. Father had counsel at the hearing, and Mother represented herself. At the hearing, Father told the trial court that he objected to Mother's vacation to see her family because he was concerned for his children's safety around Mother's relatives in Florida.[1] The trial court rejected Father's argument that Mother was actually asking for a modification of the parenting plan and was required to prove a material change in circumstances. It agreed to hear testimony from Father and Mother on the issue of the children's safety in Florida.

At the hearing, Father testified that he believed Mother's brothers in Florida would carry out alleged threats against the children supposedly made by Mother's father during the parties' divorce proceedings.[2] Mother denied Father's allegations against her father and brothers. She argued that, if Father were truly concerned for the children's safety, he would not have offered to agree to allow her to take them to Florida so long as she agreed to allow Father to take the children to Jordan.[3]

At the conclusion of the testimony, the trial court issued an oral ruling in favor of Mother. She was granted parenting time for two consecutive weeks, beginning the next day on June 11, 2011, through June 24, 2011. The trial court ordered Mother to use precautions to ensure the children's safety, allow the children to call Father at least once every day, and not leave the children in the unsupervised care of anyone other than Mother and Mother's sister in Florida.

Approximately two weeks after Mother and the children returned from Florida, on July 8, 2011, Father filed a notice of appeal, appealing the trial court's decision. In August 2011, this Court ordered Father to explain to this Court why the issue on appeal is not moot. After receiving Father's response, the Court decided to let the appeal proceed and decide the issue of mootness after hearing oral argument.

---

[1] Father's safety objections were not raised in Father's written response to Mother's petition and, as set forth above, Father's response indicates he would consent to Mother's vacation if he were permitted to take the children to Jordan.

[2] Mother's father lives in Michigan and was not expected to travel to Florida for Mother's vacation with the children.

[3] At the hearing, the trial judge observed: "Well, my impression, Mr. Rice, is that your client would like to put himself in a better posture to do whatever he wants to do. And him taking the children out of the country is a whole lot different, I think, than her taking the children down to Florida."

-4-

**ISSUES ON APPEAL AND STANDARD OF REVIEW**

On appeal, Father contends that the trial court erred in granting Mother's petition for a one-week extension of her parenting time because Mother did not plead or put on any proof of a material change in circumstances or that a modification of the parties' parenting plan would be in the best interest of the children.

**ANALYSIS**

On appeal, Mother is self-represented. She filed no brief. She appeared at oral argument before this Court but made no argument.

On appeal, Father acknowledges that he was notified on June 3, 2011 of Mother's petition and of the June 10, 2011 hearing on the petition, and that he filed a response with the trial court on June 8 in advance of the scheduled hearing. Nevertheless, Father argues that he was deprived of notice and his constitutional right to due process. Father also contends that Mother's request for a one-week extension of her parenting time for the vacation constituted a request to modify the parties' parenting plan, and as such required Mother to put on proof in court of a material change in circumstance and that her proposed modification is in the best interest of the parties' children, and that the trial court erred in granting Mother's request in the absence of such proof.[4]

As noted above, prior to oral argument in this cause, the Court asked Father's counsel to explain why the appeal is not moot. At oral argument, the Court asked Father's counsel what relief this Court could provide to Father. Counsel for Father admitted, as he must, that Mother's Florida vacation with the parties' children concluded before the appeal was even filed, and this Court cannot undo it.

Counsel for Father argues, however, that this Court should nevertheless consider the issue he raises on appeal because it fits within recognized exceptions to the mootness doctrine, namely, the acts that provoked the appeal are likely to occur again, and the public interest exception. He observes that the parties' divorce proceedings were contentious, protests that he is "being forced to use his time and financial resources in paying an attorney every time [Mother] wants to change the parenting schedule," and observes that in "an environment that is adversarial in nature, the hostility in the relationship continues to grow." He also urges this

---

[4]Father and his counsel do not argue on appeal the safety concerns that Father raised in the hearing before the trial court, nor does Father address his offer to agree to Mother's request for extended vacation time if she would agree to permit him to take the children to Jordan to visit his family.

Court to consider his appeal to show trial courts that family law is "real law" and the rules must be followed.

We observe at the outset that Father's written response to Mother's petition confirms that Father refused to agree to Mother's request for a one-time additional week of parenting time for vacation after Mother declined to consent to Father taking the parties' children on a trip to Jordan. Thus, Father's refusal forced Mother to file a *pro se* petition with the trial court for permission for the extra week. Under these circumstances, it rings hollow indeed for Father to protest "being forced to use his time and financial resources" to litigate the issue. Moreover, such tactics, to extract Mother's consent to his trip to Jordan, "results in barren ground in which to try to cultivate a cooperative parenting relationship," and places pressure on the children who are in the middle of the parties' disputes. *In re E.J.M.*, 259 S.W.3d 124, 138 (Tenn. Ct. App. 2007) (father's over-reliance on litigating disputes "border[ed] on an abuse of the judicial process" and indicated "bias against cooperation").

Though Father does not expressly acknowledge that this matter is moot, he seeks to rely on exceptions to the doctrine of mootness in this appeal. For the reasons set forth below, we find that the matter Father seeks to appeal is no longer justiciable, and decline to consider the appeal under an exception to the mootness doctrine.

This Court has previously held that the related concepts of justiciability and mootness do not, strictly speaking, involve jurisdiction, but nevertheless can operate to prevent a court from considering the merits of a case:

> Tennessee's courts do not have a constitutional limitation on their jurisdiction similar to the "case or controversy" requirement in Article III, Section 2 of the United States Constitution. They have, however, recognized justiciability doctrines similar to those developed by the United States Supreme Court to determine when courts should hear a case. 13 Charles A. Wright et al., *Federal Practice and Procedure* § 3529 (2d ed.1984); Barbara Kritchevsky, *Justiciability in Tennessee, Part One: Principles and Limits*, 15 Mem. St. U.L.Rev. 1, 3 n.5 (1984). These doctrines address not only the court's power to hear a case, but also the wisdom of doing so. *Renne v. Geary*, 501 U.S. 312, 316, 111 S. Ct. 2331, 2336, 115 L. Ed. 2d 288 (1991); *Martin v. Washmaster Auto Ctr., Inc.*, No. 01A01-9305-CV-00224, 1993 Tenn. App. LEXIS 464, 1993 WL 241315, at *1 (Tenn. Ct. App. July 2, 1993) (No Tenn. R. App. P. 11 application filed). In this way, they provide self-imposed rules that promote judicial restraint. 1 Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law: Substance and Procedure* § 2.13(a), at 246-47 (4th ed. 2007) ("Rotunda & Nowak").

The courts, being careful stewards of their power, have developed various justiciability principles to serve as guidelines for determining whether providing judicial relief in a particular case is warranted. To be justiciable, a case must involve presently existing rights, live issues that are within a court's power to resolve, and parties who have a legally cognizable interest in the resolution of these issues. A case is not justiciable if it does not involve a genuine, existing controversy requiring the adjudication of presently existing rights. *State v. Brown & Williamson Tobacco Corp.,* 18 S.W.3d 186, 193 (Tenn. 2000); *State ex rel. Lewis v. State*, 208 Tenn. 534, 537, 347 S.W.2d 47, 48 (1961); *Ford Consumer Fin. Co. v. Clay*, 984 S.W.2d 615, 616 (Tenn. Ct. App. 1998).

The requirements for litigation to continue are essentially the same as the requirements for litigation to begin. *Alliance for Native Am. Indian Rights in Tenn., Inc. v. Nicely*, 182 S.W.3d 333, 338 (Tenn. Ct. App. 2005). Thus, cases must remain justiciable throughout the entire course of the litigation, including the appeal. *State v. Ely*, 48 S.W.3d 710, 716 n.3 (Tenn. 2001); *Ford Consumer Fin. Co. v. Clay*, 984 S.W.2d 615, 616 (Tenn. Ct. App. 1998); 1 Rotunda & Nowak § 2.13, at 268-69. A moot case is one that has lost its justiciability because it no longer presents a present, live controversy. *McCanless v. Klein*, 182 Tenn. 631, 637, 188 S.W.2d 745, 747 (1945); *Hurd v. Flores*, 221 S.W.3d 14, 31, 2006 Tenn. App. LEXIS 403, 2006 WL 1641520, at *13 (Tenn. Ct. App. 2006); *County of Shelby v. McWherter*, 936 S.W.2d 923, 931 (Tenn. Ct. App. 1996). Thus, a case will be considered moot if it no longer serves as a means to provide some sort of judicial relief to the prevailing party. *Knott v. Stewart County*, 185 Tenn. 623, 626, 207 S.W.2d 337, 338-39 (1948); *Ford Consumer Fin. Co. v. Clay*, 984 S.W.2d at 616; *Massengill v. Massengill*, 36 Tenn. App. 385, 388-89, 255 S.W.2d 1018, 1019 (1952).

*State ex rel. Cunningham v. Farr*, No. M2006-00676-COA-R3-CV, 2007 WL 1515144, at *2-3; 2007 Tenn. App. LEXIS 327, at *6-9 (Tenn. Ct. App. May 23, 2007). *See also DeSelm v. Jordan*, 296 S.W.3d 530, 534 (Tenn. Ct. App. 2008) (quoting *Cunningham*). Thus, mootness is one of the reasons why a case may not be justiciable.

It is well-settled that the role of the Court is to adjudicate and resolve legal rights, not to give abstract or advisory opinions. *Norma Faye Pyles Lynch Family Purpose, LLC v. Putnam County*, 301 S.W.3d 196, 203 (Tenn. 2009). "The courts of this State have no right to render

an advisory opinion" where the issue in the case is moot. ***State ex rel. Lewis v. State***, 347 S.W.2d 47, 48 (Tenn. 1961).

The determination of whether a case or an issue has become moot is a question of law. ***Alliance for Native Am. Indian Rights in Tenn., Inc. v. Nicely***, 182 S.W.3d 333, 338-39 (Tenn. Ct. App. 2005).

In this case, Mother had returned with the children from their Florida vacation before Father even filed this appeal. Father can point to no specific relief this Court can grant him with respect to that vacation. Clearly, the matter is moot and no longer justiciable.

Father asks this Court to nevertheless consider his appeal under one of the exceptions to the mootness doctrine. First, he argues that the issue he raises in this case is capable of repetition yet evading review. ***Alliance***, 182 S.W.3d at 339-40. We decline to consider the appeal under this exception. This matter is unlikely to recur if there is not a continued "bias against cooperation" by the parties.

Father also asks us to consider his appeal under the public policy exception to the mootness doctrine. ***See Norma Faye***, 301 S.W.3d at 210-11. Father invites this Court to use his appeal of Mother's one-time, one-week extension of parenting time as a platform to lecture trial courts on the importance of procedural punctiliousness in family law matters. We respectfully decline to do so.

Thus, we hold that this appeal is moot and decline to hear the appeal on that basis.

## CONCLUSION

The appeal is dismissed as moot. Costs on appeal are assessed against Appellant Mahmoud Awad Mohammad and his surety, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE